491:33 LRA 348
38 LRA 128

THE PEOPLE *v.* FRANK S. WEIGLEY *et al.*

and

THE PEOPLE *v.* ALBERT T. AMES *et al.*

*Filed at Springfield April 2, 1895.*

1. CONTEMPT—*two cases considered together—answer of one defendant available to all.* An answer to a rule to show cause why a person should not be attached for contempt, denying the jurisdiction, is available to other parties sought to be attached for the same contempt, where it has been stipulated that the cases shall be considered as one.

2. SAME—*defendant not limited to defenses set up in answer.* A party charged with contempt in interfering with property in the possession of a receiver, is not limited, upon his trial, to the defenses set up in the answer to the rule to show cause.

3. SAME—*party bringing accusation must show valid order of court.* A party bringing an accusation of contempt in refusing to respect and obey an order of the court, is, in the absence of an admission of the facts by the defendant, bound to prove the existence of a valid order.

4. SAME—*interference with property of receiver by one not a party to suit, is contempt.* Any unauthorized interference with the possession of the property of a corporation by a receiver appointed by a court having jurisdiction of the parties and subject matter, either by taking forcible possession or by legal proceedings without the sanction of the appointing court, is a contempt, punishable by attachment, although the person so interfering was not a party to the proceeding in which the receiver was appointed.

5. DECREES—*appointing receiver may be attacked collaterally, if void.* A decree appointing a receiver is open to collateral attack upon a proceeding for contempt in its disobedience, if absolutely void.

6. SAME—*may be shown void by defendant in contempt.* One charged with contempt of a judgment or decree may acquit himself by showing that it is a nullity, but cannot be heard to question it on the ground of irregularity, however erroneous.

7. RECEIVER—*appointment of, void, where court has no jurisdiction of subject matter.* A court without jurisdiction to grant the ultimate relief prayed by a bill for the dissolution of a corporation has no power to appoint a receiver and authorize him to assume possession and control of the corporate assets.

8. CORPORATION—*meaning of term "ceasing to do business"—receiver.* The cessation of business by a corporation because of the levy of attachments upon its property is not a ceasing to do business, within the meaning of the statute authorizing its dissolution by a court

of equity and the appointment of a receiver, on a bill by a single stockholder, to which only part of the creditors are made parties.

9. SAME—*jurisdiction of equity to dissolve, is statutory.* Courts of chancery are without jurisdiction to decree the dissolution of corporations, except in so far as such jurisdiction is conferred by section 25 of the act on corporations, and can dissolve them for no causes other than those therein mentioned.

*Weigley* v. *People*, and *Ames* v. *People*, 51 Ill. App. 51, affirmed.

APPEAL from and writ of error to the Appellate Court for the First District;—heard in that court on appeal from and writ of error to the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

The Northwestern Shoe Company is a corporation organized under the laws of this State, its business being the manufacture and sale of boots and shoes in the city of Belvidere, Boone county. On the second day of September, 1892, certain of its creditors sued out of the Boone county circuit court writs of attachment in aid of suits in assumpsit against the company, and the sheriff, Albert T. Ames, one of these appellees, levied the same upon the personal property of the company. Thereupon Jacob Graff, one of the stockholders, as sole complainant, filed a bill in the Superior Court of Cook county, making only the attaching creditors, the corporation and the sheriff defendants. The bill alleges the existence of the corporation, engaged in the business of manufacturing and selling boots, shoes, etc., with a capital stock of $75,000, $9300 of which was owned by the complainant; that up to September 2, 1892, it had carried on its business, and then had on hand a large quantity of boots, shoes and other merchandise in its factory at Belvidere, and also owned the machinery, building and premises upon which its factory was located; that its plant and business were valuable; that it had acquired the good will and customers, to whom it had been furnishing goods, and to whom it could in the future furnish goods, if permitted to do so, in the usual way of trade; that on September 2,

1892, the Merchants' National Bank of Chicago, and other creditors of the corporation, caused suits to be commenced against the company in the circuit court of Boone county, returnable at its September term, 1892, and on the same day, September 2, caused writs of attachment to be levied upon the merchandise and personal property of the company by the sheriff of said Boone county, who now holds the same; that by reason of said levies the company has ceased doing business, and is thereby deprived of the benefits of its good will and the use of its property, to the injury of complainant, as a stockholder; that a large number of other suits had been brought against the company in said circuit court, to its September term, 1892, amounting to about $10,000; that if properly managed and handled, under the directions of the court, or of a receiver to be appointed by the court, the company assets will realize more than sufficient to pay its debts; that the company is indebted, in addition to the amount due the attaching creditors, in a large sum, which should be paid out of its assets; that the assets, if permitted to be held by the sheriff, will be held for a long time by him without being used in any manner to the interest of the company, the machinery and plant of the corporation being out of use and rendered valueless; that if said property so held by the sheriff were turned over to a receiver, the machinery and plant would be operated with benefits and advantages to the interest of all the stockholders, and would enable the corporation to pay its debts and return to the stockholders sufficient assets for a division among themselves, but otherwise the property will be wasted, the machinery become useless, the entire plant go to wreck and the said goods and merchandise become out of season and injured, so that there cannot be realized thereon their fair value for the purpose of liquidating the company indebtedness; that there are a large number of orders on hand which should be filled, and for which the goods and merchandise are now

in the hands of the sheriff, and for which payment could be made by the persons ordering the same, and a large sum of money, amounting to $10,000 or $15,000, realized to discharge and liquidate its debts; that the company has title to the land and buildings where its business is located, upon condition that its business is kept in motion and its employees kept employed, and that it would be able to do so but for the seizure of its property by the sheriff, but if he is permitted to retain possession thereof such title will be forfeited, to the injury of complainant and other stockholders and creditors; that a receiver can operate and run the business to the advantage of all concerned; that there is material on hand which could be used in the manufacture of boots, shoes and slippers, and a large quantity of boots and shoes which could be sold and used for the payment of debts; that the stock of merchandise and property now on hand are about $35,000; that unless the property and assets of the company should be used and administered under the directions of the court, there will not be sufficient to pay the creditors of the corporation, and the stockholders will be deprived of the benefits of any of its property; that if the same should be administered under the directions of this court, by a receiver, there would be realized more than suffi-cient to pay its obligations, and leave sufficient in the hands of the receiver for distribution to the stockholders therein.   It is then again alleged that the company "has not, since September 2, 1892, performed the functions for which it was incorporated; that it ceased doing business on said date, and is not now doing any business what-ever;" that the Merchants' National Bank had, at the time of suing out its attachment, and still has, a large quantity of boots and shoes of the company as security for its indebtedness, which was sufficient to discharge the same, etc.; that the company is the holder of a large number of notes, accounts and bills receivable, aggre-gating several thousand dollars, which should be col-

lected by a receiver, and applied, under the directions of the court, among the creditors and stockholders of the corporation. It concludes as follows :

"Insomuch as complainant is remediless in the premises, save in a court of equity, he files this his bill of complaint against the Northwestern Shoe Company, Merchants' National Bank of Chicago, First National Bank of Elgin, Daniel Forbes & Co., Albert T. Ames, sheriff of Boone county, and asks that they, and each of them, may be required to appear and answer this bill of complaint and each and all the allegations therein contained, answer under oath being waived ; that a decree may be entered dissolving said Northwestern Shoe Company and winding up its affairs ; that the property and assets of said Northwestern Shoe Company may be properly marshaled, collected and distributed, under the direction of this honorable court; that a receiver may be appointed by this court to immediately take possession of the property and assets of the Northwestern Shoe Company and hold the same subject to the order of the court, and that he be vested with all the powers of receivers in chancery, and collect, marshal and dispose of the assets and property of said corporation, under the direction of this court; that the property now held by Albert T. Ames, sheriff of Boone county, and each and every portion thereof, be turned over to a receiver, to be by him handled and administered upon, under the orders and directions of this court; that the receiver may be permitted to proceed with the business of said corporation ; that it may manufacture such goods and articles as may be necessary for the purpose of filling the orders on hand; that it may carry on the business of the Northwestern Shoe Company until each and all the debts and obligations of said company shall be discharged, and that all the property and assets remaining in the hands of the receiver then be marshaled and distributed by said receiver, under the directions of this

honorable court; that the said attaching creditors, and each of them, be restrained and enjoined from prosecuting their said attachment suits until the further order of this court; and that said Albert T. Ames, as sheriff, be restrained and enjoined from proceeding with the writs of attachment, in any manner, until the further order of the court."

There was a prayer for summons, to be directed to the sheriffs of Cook and Boone counties, and a prayer for injunction.

On the same day the bill was filed, the corporation, by its president, Barnett Graff, appeared in the Superior Court and consented to the appointment of a receiver, as prayed, and the court immediately entered the following order:

"It is ordered that Robert W. Wright, of the city of Belvidere, Boone county, Illinois, be and is hereby appointed receiver of the defendant, the Northwestern Shoe Company, with the usual powers of receivers in equity, upon his giving bond in the penal sum of $50,000, with security to be approved by the clerk of this court, conditioned upon the faithful performance of his trust, and that upon the approval and filing of such bond the said Robert Wright shall be vested with all his rights and powers as receiver. And it is further ordered that the defendant assign, transfer and deliver over to said receiver, under the direction of James R. Mann, master in chancery of this court, all and singular the property, real and personal, of and belonging to the said corporation, and that said defendant, its officers and agents, forthwith surrender and deliver to said receiver all the assets, materials, tools, machinery, fixtures, effects and property, of every nature and kind, of or belonging to said defendant, the Northwestern Shoe Company, and also all money, notes, drafts, bills of exchange, checks or other evidences of indebtedness due and owing to said corporation, the Northwestern Shoe Company, as well

as all books of account, accounts, deeds, bonds, mortgages, certificates of stock, vouchers and papers, of every nature, belonging to said Northwestern Shoe Company. It is further ordered that said receiver continue the management of the business of said Northwestern Shoe Company till the further order of court."

Summons was issued against the sheriff, returnable to the following October term, and duly served.   On the 20th of September, Chick Bros., by appellees Weigley, Bulkley & Gray, their attorneys, recovered a judgment against the corporation in the circuit court of Cook county, and on the 27th of the same month these attorneys caused an execution to be issued on that judgment and placed in the hands of said sheriff, Ames, with directions to levy the same upon certain boots and shoes belonging to the company, then in its freight house at Belvidere.   The levy having been made as directed, the Superior Court entered a rule upon said attorneys and their clients, Chick Bros., to show cause why they should not turn that property over to the receiver, or be attached for contempt.   Only the attorneys were served, and they refused to release the property, but answered the rule to show cause.   Their answer was held insufficient, and on a trial they were each found guilty and sentenced to the county jail of Cook county for contempt.   Contempt proceedings were at the same time, in like manner, commenced against the sheriff, Ames, for refusing to turn over the goods so levied upon by him, and he was also adjudged guilty of contempt.   These judgments were reversed by the Appellate Court and the People appealed to this court.   By agreement of parties the cases are consolidated, to be considered as one.

On a consideration of the record, and the errors assigned thereon, at our June term, 1893, we reached the conclusion that the judgments of the Appellate Court were right and should be affirmed, and an opinion to that

155—32

effect was filed October 27, 1893.   The case is before us now on a rehearing.

Upon the former submission appellees entered a motion to dismiss the appeal upon the ground that the proceedings were criminal, and therefore not appealable by the People.   That motion was overruled, on the ground that the attachments for contempt, being instituted upon the motion of a party to the chancery suit for the purpose of enforcing a decree in his favor, were in the nature of civil actions, as held in *Leopold* v. *People*, 140 Ill. 552, and *People* v. *Diedrich*, 141 id. 665, either party having a right to appeal.   The correctness of that decision is not now questioned.   The conclusion then reached on the merits of the case was, that the order which appellees were charged with violating was void for want of jurisdiction of the subject matter in the court to make it, and therefore the conviction for disobeying it was erroneous.

MOSES, PAM & KENNEDY, for People :

Judicial proceedings are not void collaterally, when jurisdiction is taken by reason of a mistake of law in construing a statute or the common law.   *Welsh* v. *Reid*, Morris, 467; *Arnold* v. *Booth*, 14 Wis. 180 ; *Parker's case*, 5 Tex. App. 579 ; *Ex parte Boeninghausen*, 91 Mo. 301; *In re Harris*, 47 id. 164; *Ex parte Bouler*, 16 Mo. App. 14; *Matter of Underwood*, 30 Mich. 532; *Maybury* v. *Kelly*, 1 Kan. 116 ; *Ex parte Fisher*, 6 Neb. 309 ; *Whiting* v. *Beebe*, 12 Ark. 421 ; *Matter of Donohue*, 1 Abb. N. C. 52.

The bill, which was at first simply a stockholder's bill, was by the willing action of the defendant creditors turned also into a creditor's action, which likens the case at bar to many cases in the Illinois Reports.   *Mining Co.* v. *Edwards*, 103 Ill. 472 ; *Mining Co.* v. *Mining Co.* 111 id. 32; *Mining Co.* v. *Mining Co.* 116 id. 172.

When the judgment of the court rendered does not exceed the possible power of the court, and the notice is sufficient to put the defendant upon inquiry, a court

should hesitate long before holding judicial proceedings void collaterally. . *People* v. *Sturtevant*, 9 N. Y. 363 ; *State* v. *State*, 12 Pet. 718; *Wilcox* v. *Jackson*, 13 id. 311; *Hunt* v. *Hunt*, 72 N. Y. 228 ; *Whittlesey* v. *Frantz*, 73 id. 456.

As a rule, the proper way in which to get rid of an irregular or erroneous appointment of a receiver is by a direct proceeding to set it aside, and for an order staying the proceedings under it in the meanwhile. Beach on Receivers, citing *Richards* v. *People*, 81 Ill. 551.

If jurisdiction appears in any part of the record it is sufficient. *Anderson* v. *Watt*, 38 U. S. 694; *McCormick* v. *Sullivant*, 10 Wheat. 192 ; *Buchanan* v. *Rice*, 2 Ohio St. 252 ; *Wood* v. *Bluthe*, 46 Wis. 653 ; *Palmer* v. *Colville*, 18 N.Y. Sup. 509.

WEIGLEY, BULKLEY & GRAY, for appellees and defendants in error :

Strangers are third persons,—generally, all persons in the world except parties and privies. Anderson's Law Dic. 980 ; *Robbins* v. *Chicago*, 4 Wall. 672 ; 1 Greenleaf on Evidence, sec. 523.

Collateral attack is thus defined : "To question the validity of a thing done in court in an independent proceeding, as to collaterally attack a judgment or judicial sale." Anderson's Law Dic. 192.

The rule that a judgment of a court of competent jurisdiction is conclusive until reversed or in some manner set aside and annulled, and that it cannot be attacked by evidence tending to show that it was irregular or improperly obtained, only applies to parties and privies to the judgment who may take proceedings for its reversal, and in no sense extends to strangers. Black on Judgments, sec. 260; *Atkinson* v. *Allen*, 12 Ill. 358.

Judgments do not bind strangers. Black on Judgments, sec. 600.

It is a general and established rule that when a party's right may be collaterally affected by a judgment which,

for any cause, is erroneous and void, but which he can not bring a writ of error to reverse, he may, without reversing it, prove it was erroneous and void in any suit in which its validity is brought in question. Freeman on Judgments, (ed. of 1874,) sec. 337; *Vose* v. *Morton,* 4 Cush. 27; *Leonard* v. *Bryant,* 11 Metc. 370; *Down* v. *Fuller,* 2 id. 135; *Griswold* v. *Stewart,* 4 Cow. 458; *In re Morton,* 10 Mich. 208; Vanfleet on Collateral Attack, sec. 17.

Where a court is without authority to pass a particular sentence, such sentence is void, and the defendant imprisoned under it must be discharged on *habeas corpus. In re Nelson,* 131 U. S. 176; *Ex parte Parker,* 93 id. 18; *In re Yarbrough,* 110 id. 651; *In re Leach,* 51 Vt. 630.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

One of the points made in the petition for rehearing is, that appellees Weigley, Bulkley & Gray, in their answer to the rule to show cause why they should not be attached for contempt, did not question the general jurisdiction of the Superior Court to adjudicate upon the case presented to it, and therefore that question was not properly before us for decision. It is true, those parties, in that answer, placed their denial of such jurisdiction upon the ground that the corporation was not, at the time of filing the bill, doing business in Cook county and had no property there. It is not denied that Ames, the other appellee, did in his answer specifically deny the "power or authority" of the court, "under the bill filed then, to appoint a receiver for the defendant, the Northwestern Shoe Company," and as it has been stipulated that the two cases shall be considered as one, all parties are entitled to the benefit of that denial. We do not, however, understand that a party charged with contempt, in a case of this kind, is limited, upon his trial, to the defenses set up in his answer to the rule to show cause. The contempt proceeding, being for the benefit

of the complainant in the chancery suit, partakes of that cause, and is according to the forms of practice in chancery. (*People* v. *Diedrich*, 141 Ill. 665. See, also, cases there cited.) The party accused is entitled to a trial. The charge in this case being the refusal of the defendants to respect and obey an order of court, the party bringing the accusation was, in the absence of an admission of that fact by the defendants, bound to prove the existence of such an order. Accordingly he offered in evidence the bill of complaint, summons and return, appearance and consent of the Northwestern Shoe Company to the appointment of the receiver, and the order appointing the receiver. If absolutely void, that decree was and is open to attack, directly or collaterally, whenever and wherever an attempt is made to set it up as the basis of a right of action. As was said in *Buckmaster* v. *Carlin*, 3 Scam. 108, speaking of the distinction between judgments and decrees which are void and those which are merely voidable : "The former are binding nowhere; the latter everywhere, until reversed by a superior authority."

It is assigned for error upon this record that the court below erred in holding it had jurisdiction to appoint a receiver of the property of the Northwestern Shoe Company, and in holding that it had jurisdiction to entertain the bill of Jacob Graff for any purpose, and we entertain no doubt that under these assignments of error the defendants below had the right to insist, in the Appellate Court, that the decree which they were charged with disobeying was a nullity, and have the same right here.

Much time is spent, in the argument of the case, discussing the question as to whether this is to be treated as a direct or collateral attack upon that order. It is well settled that a party charged with contempt of a judgment or decree may acquit himself by showing that such judgment or decree is a nullity, but cannot be heard to question it on the ground of irregularity, however erroneous. (*Tolman* v. *Jones*, 114 Ill. 147; *Leopold* v. *People*, 140

id. 552.) In the latter case we said: "A party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make. Want of power, as here used, is not, however, to be confused with mere irregularity in the exercise of power, for if the court has jurisdiction of the parties, and legal authority to render the order, then a party cannot stand in defiance of it, however improvidently or erroneously made." Whether the attack is said to be direct, or merely collateral, is immaterial. If the Superior Court had jurisdiction of the parties and the subject matter of the action in which the receiver was appointed, he became the officer of the court, and his possession of the property of the corporation was the possession of the court itself, "and any unauthorized interference therewith, either by taking forcible possession of the property committed to his charge or by legal proceedings for that purpose, without the sanction of the court appointing him, is a direct and immediate contempt of court, and punishable by attachment." (*Richards* v. *People*, 81 Ill. 551.) It makes no difference that the party charged with the contempt was not a party to the proceeding in which the receiver was appointed.

The vital question in the case then is, as stated in our former opinion, "whether the Superior Court in which the receiver was appointed, and in which the order was entered to turn over the goods, had jurisdiction of the subject matter of the bill." The relief sought by the bill in this case was the dissolution of the corporation and settlement of its business. The appointment of the receiver was a mere incident to that relief, to enable the court to take possession of the property and business of the company and finally wind up its affairs. It is clear, if the court was without jurisdiction to grant the ultimate relief prayed by the bill, it had no power to appoint the receiver and authorize him to assume possession and control of the corporation assets. It is well settled by

the decisions of this court as well as the authorities generally, that courts of chancery are without jurisdiction to decree the dissolution of corporations, except in so far as that jurisdiction is conferred by statute; and we deem it too clear for argument, that if the Superior Court had jurisdiction to adjudicate upon the subject matter of the bill of Jacob Graff and grant the relief therein prayed, that jurisdiction must be attributed to section 25, chapter 32, of our statute, and not to its general equity powers, sitting as a court of chancery. That section of the statute provides : "If any corporation or its authorized agents shall do, or refrain from doing, any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record for a payment of money, after demand made by the officer, to be returned 'no property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business leaving debts unpaid, suits in equity may be brought against all persons who are stockholders at the time, or liable in any way for the debts of the corporation, by joining the corporation in such suits, and each stockholder may be required to pay his *pro rata* share of such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation. And if any stockholder shall not have property enough to satisfy his portion of such debts or liabilities, then the amount shall be divided equally among all the remaining solvent stockholders. And courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor, who shall have authority, by the name of the receiver of such corporation (giving the name), to sue in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court." Does it confer general jurisdiction upon courts of equity in this State to dissolve corporations and settle their business affairs?

We held in *Wheeler* v. *Pullman Iron and Steel Co.* 143 Ill. 197, that the two clauses of the above section must be construed together, and that the "good cause" which must be shown by the second clause to authorize courts of equity "to dissolve or close up the business of any corporation, to appoint a receiver therefor, with authority to wind up its affairs," means some one or more of the causes mentioned in the first clause,—that is to say, courts of equity only have jurisdiction to so decree when certain causes exist, which are the doing or refraining from doing some act which shall subject the corporation to a forfeiture of its charter or corporate power, or allowing an execution or decree of any court of record for the payment of money, after demand made by the officers, to remain unpaid, or that the corporation has dissolved or ceased doing business, leaving debts unpaid. It cannot be seriously contended that this bill shows the existence of any of these causes for dissolving the Northwestern Shoe Company at the time it was filed. The only reason shown for filing it is, that creditors of the corporation had commenced suits against the company to collect debts which it owed them, and had seized certain of its property by proper writs of attachment. All the other averments of the bill are to the effect that if creditors are permitted to so collect their debts great injury will result to the complainant as a stockholder. It is not even shown that the corporation could not have paid the debts for which it was sued, if it had desired to do so. The allegation "that said company has not, since September 2, 1892, performed the functions for which it was incorporated; that it ceased doing business on said date and is not now doing any business whatever," is but a repetition of the averment "that by reason of the levy of said attachments upon the said property of said company the company has ceased doing business, and is thereby deprived of the benefit of its good will and the use of its property, to the injury of complainant, as such

stockholder." The writs of attachment were levied on the second day of September, 1892. The company ceased to do business on that day because the writs were levied, viz., because its creditors were proceeding, in a lawful manner, to enforce payment of their debts, and thereupon a stockholder seeks to make that ceasing to do business the ground of jurisdiction in a court of equity to postpone the creditors, place the corporation in the hands of a receiver and wind up its affairs. To hold that ceasing to do business under such circumstances is within the meaning of the statute, would be to defeat the very purpose for which the law was enacted.

We said in *Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118, speaking of this section 25: "It is manifest, however, that the statute provides a remedy in the nature of a creditor's bill, and is designed to aid creditors in the collection of their debts, and it is also plain, from the statute, that, as part of the relief afforded in such suit in equity, the chancery court has full power, for good cause shown, to close up the business of any corporation, or dissolve it." And again: "We think it clear that it was the intention of the legislature, by the enactment of said section 25, to afford remedies to creditors of corporations for the enforcement of their private and personal rights,—and this even to the extent of permitting courts of equity, for good cause shown, to decree the dissolution of the corporation sued." To the same effect is *Wheeler* v. *Pullman Iron and Steel Co. supra.*

To hold that, under this statute, whenever creditors of a corporation attempt to collect their just claims against it by action at law, stockholders may invoke the jurisdiction of a court of equity to take charge of all the company assets, and thus defeat the creditors, because the enforcement of their rights by authorized processes of law would result in embarrassment or loss to the company, would be to not only violate its plain provisions, but to allow it to be used to defeat the very purpose for

which it was enacted.   Here is a bill by a single stockholder, other stockholders not being made parties.   Only a part of the creditors are made parties, others being given no opportunity to question the jurisdiction of the court or the sufficiency of the bill.   None of the causes for which, by the statute, courts of equity are authorized to take charge of corporations and close them up, are alleged.   That the ultimate relief prayed for cannot be lawfully granted by the court upon this bill, it seems to us, must be conceded.   Can it be said, nevertheless, the court, in making the interlocutory order appointing the receiver, only proceeded irregularly, and therefore the validity of that order cannot be questioned in this proceeding?   We think not.   Having no general equity powers in the case, and the bill wholly failing to bring it within the provisions of section 25, the Superior Court exceeded its jurisdiction in making the order which appellees are charged with violating, and that order must therefore be held void.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*