WILLIAM HAGAR v. GEO. N. HAAS *et al.*

No. 12,065.   (71 Pac. 822.)

66   333<br>69   700

SYLLABUS BY THE COURT.

1. ATTACHMENT — *Trespass.* A seizure of property by an officer under a void attachment is nothing better than a naked trespass, as against a stranger who is in the rightful possession of such property.

2. ———— *Sale of Perishable Property — Owner not Estopped by Purchase.* In a controversy as to the ownership and right of possession of attached property, the court, during the pendency of an action to recover the same from the attaching officer, ordered it to be sold because it was of a perishable nature, and at such sale the plaintiff became a bidder and purchased the property. *Held*, that the bid and purchase did not estop plaintiff from further asserting title and right of possession to the property.

3. ———— *Verdict Improperly Ordered by Court.* Where the plaintiff makes a *prima facie* showing of ownership and right of possession of property attached by an officer as the property of another, and the attachment under which the officer justified is held to be void, a verdict in favor of the officer cannot be ordered by the court.

Error from Jackson district court; MARSHALL GEP-HART, judge.   Opinion filed March 7, 1903.   Reversed.

*Crane & Woodburn,* for plaintiff in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : This was an action of replevin to recover corn grown upon the premises of D. H. Hagar. On June 27, 1899, Philip Haas, under-sheriff of Jackson county, attempted to levy an attachment on the growing corn as the property of D. H. Hagar. He went through the form of making an appraisement and declaring a levy on the corn, but did not take possession or control of it, nor exercise any dominion over it, until about the 14th of November of that year.

On August 9, 1899, D. H. Hagar, who was then in possession of the corn, sold and delivered the possession of it to William Hagar. After the harvesting of the corn had begun, the sheriff and under-sheriff came upon the land and took possession of the corn, against the protest of William Hagar, who at once began this action of replevin. A redelivery bond was given and the corn was kept by the sheriff, and, while the attachment was pending, an order was made by the judge of the district court directing the sale of the corn, because it was of a perishable nature and in danger of being destroyed. At a sale had on the 20th day of November, the sheriff sold the corn in controversy to William Hagar, who was the plaintiff below in this action. The sheriff claimed a right to the possession by virtue of the levy of attachment, but in the course of the trial the court held that the levy was absolutely void, and struck from the case all testimony pertaining to the attachment.

William Hagar made at least a *prima facie* showing of the elements essential to a recovery, namely, ownership, right of possession, and wrongful detention. Notwithstanding the fact that the sheriff and under-sheriff failed to show any right to the corn the court directed a verdict in their favor. This was error. The only justification of the officers for taking and detaining the corn was the order of attachment, and when the attachment proceedings were held to be void and stricken from the testimony, they were shown to be without any right of possession, and their seizure and detention were nothing better than a trespass.

No one has appeared here to represent the officers, nor has any argument been made supporting or explaining the decision of the court, but statements are made in the record indicating that the purchase of the

corn by Hagar at the sale ordered by the judge may
have been treated as an estoppel against a recovery by
him.   His act in bidding and purchasing at the sale
lacks the essential elements of an estopel *in pais*.   It
was not intended to, and did not, influence or affect
the officer in the matter of sale.   Hagar did not assent
to the seizure or waive the invalidity of the attach-
ment.   He was contesting the validity of the seizure
and the right of the officers to attach and hold the
corn.   It was his assertion of ownership, his opposi-
tion to the levy and delay consequent upon his oppo-
sition and contest, which caused the judge to order
the sale of the corn.   It was an enforced sale to re-
lieve the officers from holding property of a perisha-
ble nature during the pendency of the litigation, the
object of which was to determine who owned, and
was entitled to the possession of, the property.   There
can be no pretense that the officers were influenced by
the offer and purchase by Hagar at the sale of the
corn, which they were making under the authority of
the court.   The sale was required to be made without
regard to who was present and bid at the sale.   In an
attachment proceeding, where there was an order for
the sale of perishable property during the pendency
of the proceedings, it was held that the silence of a
party and her failure to resist the sale so ordered did
not waive her right to contest the validity of the at-
tachment and seizure of the property sold.   (*McKinney
v. Purcell*, 28 Kan. 446.)

Nor can the fact that Hagar bid at such sale be
treated as a recognition of the validity of the attach-
ment, nor a waiver of his right still further to assert
ownership of the property wrongfully detained by the
officer.   A different phase of the case might arise if
some one had been led to purchase at the sale by

reason of Hagar's being a bidder, but there is no basis for a claim that the officers were misled or injured by Hagar's bid and purchase, nor are there any equitable considerations which warrant them in setting up an estoppel. (*Crump et al. v. Starke*, 23 Ark. 131; *Ford v. Williams*, 24 N. Y. 359; *Wessels v. Weiss Bros.*, 156 Pa. St. 591, 27 Atl. 535.) The fact that he purchased the corn may, as held in *Dodson v. Cooper*, 37 Kan. 346, 15 Pac. 200, affect the amount of his recovery, but under the circumstances it cannot operate as an estoppel. Under the testimony the direction of the verdict was material error, and for this ruling the judgment must be reversed and the cause remanded for a new trial.

All the Justices concurring.