HOMER C. BOWMAN *et al.* v. W. R. HAZEN.

**No. 13,754.**    (77 Pac. 589.)

SYLLABUS BY THE COURT.

1. RECEIVER—*Appointment Collaterally Attacked.* An order of court appointing a receiver to take custody of property involved in litigation which was unwarranted and erroneous, but not absolutely void, is not open to collateral attack.

2. ———— *Void Orders Open to Collateral Attack at Any Time.* The orders of a court purporting to vest a receiver with the authority and control over property and funds not involved in the litigation in which the receiver was appointed are absolutely void, and can be collaterally attacked at any time by any one in any proceeding, where their validity is in issue.

3. ———— *Receiver and Applicants are Trespassers and Liable for Conversion.* The receiver who takes such property and funds under the void orders without the consent, and contrary to the wishes, of the owner, and those who procure the orders to be made and cooperate with him in the wrongful seizure and appropriation are all trespassers, and are liable for the property and funds so wrongfully taken, with interest.

4. ———— *Benefits to the Wronged Party Not an Excuse.* Those who wrongfully seize property and funds cannot excuse themselves by showing that the use which they made of them was, to some extent, beneficial to the wronged party. Such trespassers cannot compulsorily constitute themselves the disbursing agents of the owner; nor can they make themselves his creditors by paying his obligations without his request or consent.

Error from Douglas district court; C. A. SMART, judge. Opinion filed July 7, 1904. Affirmed.

STATEMENT.

THIS was an action by W. R. Hazen to recover rents alleged to have been wrongfully and unlawfully collected through a void receivership by Homer C. Bowman, M. W. Van Valkenburg, Josie Webb, and Millie

Nichols. At the trial the court made the following findings of fact and conclusions of law:

"FINDINGS OF FACT.

"1. This action is prosecuted by the plaintiff against the defendants to recover the rents collected by the defendants from October 13, 1900, to June 1, 1902, on the following-described real estate: The undivided one-half of lot No. 149, the south ten feet of lot No. 147, and the north ten and one-half inches of lot No. 151, the undivided one-half of lot No. 165, the whole of lot No. 167, and the north twenty feet of lot No. 169, all on Kansas avenue, in the city of Topeka, Shawnee county, Kansas.

"2. For many years prior to the commencement of any action against John S. Branner by either Josie Webb or Millie Nichols, said John S. Branner had been in the actual and peaceable possession of the whole of lot No. 165, lot No. 167, the north twenty feet of lot No. 169, the undivided half of lot No. 149, the south ten feet of lot No. 147, and the north ten and one-half inches of lot No. 151, and collecting the rents and profits from said real estate, claiming to be the owner of the same, and at the time of the appointment of M. W. Van Valkenburg as receiver, said Branner was in the peaceable possession of all said real estate and collecting the rents and profits of the same, except the undivided half of lot No. 165, which had been turned over to said Josie Webb and Millie Nichols in pursuance of a written agreement hereinafter referred to; all of the property at the time being occupied by tenants of said John S. Branner.

"3. On October 13, 1900, and for some time prior thereto, and since said date, up to and including June 1, 1902, the plaintiff was the owner of the real estate described in finding No. 1, which property he purchased from John S. Branner on May 8, 1900.

"4. On April 24, 1894, Josie Webb, one of the defendants herein, commenced an action in the district court of Shawnee county, Kansas, against John S. Branner, to recover a one-fourth interest in lot No.

165 on Kansas avenue, in the city of Topeka, and for rents and profits, which action by proper orders and proceedings was transferred to Jackson county, Kansas, and became cause No. 3622 on the records of the district court of said Jackson county, Kansas, and which cause was duly tried in said court on July 2, 1898, and verdict rendered and judgment entered finding and adjudging Josie Webb to be the owner and entitled to the possession of an undivided one-fourth of said lot No. 165 and for $4500 rents and profits.

"5. On March 29, 1899, upon application of Josie Webb, plaintiff in said cause No. 3622, at chambers, and without notice, the judge of that court appointed the defendant M. W. Van Valkenburg receiver, and he at once qualified and entered upon the discharge of his duties. By the order appointing said M. W. Van Valkenburg as such receiver, he was directed to immediately take charge of the undivided one-half of lot No. 149, the south ten feet of lot No. 147, and the north ten and one-half inches of lot No. 151, the undivided one-half of lot No. 165, all of lot No. 167, and the north twenty feet of lot No. 169, on said Kansas avenue, Topeka; to collect the rents due from the tenants of said property, to sue for and recover any of such rents in any court of competent jurisdiction, to make all contracts for the leasing and letting of said premises; out of the rents collected to pay taxes due or to become due, and interest on all valid liens against said property and to pay insurance and all necessary and proper repairs. It was further ordered that the defendant in that action, John S. Branner, his agents and attorneys, and all persons acting for him or in his behalf, be strictly enjoined and restrained from in anywise interfering with the discharge by the receiver of the duties imposed upon him by said order.

"6. Prior to March 29, 1899, there had been begun an action in the district court of Shawnee county, Kansas, which by proper order had been transfered to the district court of Jackson county, Kansas, for trial, wherein Millie Nichols, a sister of Josie Webb,

was the plaintiff and said John S. Branner was the defendant, which action became cause No. 3623 upon the record of said district court of Jackson county, Kansas, and which action was tried on November 26, 1898, and a judgment duly rendered in favor of said Millie Nichols and against said John S. Branner, adjudging said Millie Nichols to be the owner and entitled to the possession of an undivided one-fourth of lot No. 165 on Kansas avenue, in the city of Topeka, Kan., and for $4742.20 rents and profits.

"7. On March 31, 1898, the said Josie Webb and Millie Nichols commenced an action in the district court of Shawnee county, Kansas, against said John S. Branner, to recover possession of an undivided one-half of lot No. 167, and an undivided one-half of the north twenty feet of lot No. 169, and for rents and profits. By proper order said cause was transferred to the district court of Jackson county, Kansas, for trial, and became cause No. 3624 upon the records of said court. On September 5, 1900, the plaintiff in this action, William R. Hazen, upon his own application, became a party defendant in said cause, and asserted a claim of title to lot No. 167 and the north twenty feet of lot No. 169, under deed from John S. Branner. The said cause was tried on January 30, 1901, and a judgment duly rendered in favor of Josie Webb and Millie Nichols, plaintiffs, and against John S. Branner, and William R. Hazen, defendants, for the possession of an undivided one-half of said lot No. 167, and an undivided one-half of the north twenty feet of lot No. 169, on Kansas avenue, Topeka, and other land, and for costs amounting to $843, and a further judgment against John S. Branner for $12,196.94.

"8. Said causes Nos. 3622, 3623 and 3624 were each actions in ejectment, and for rents and profits.

"9. On August 15, 1898, while said causes Nos. 3622, 3623 and 3624 were either being reviewed, or being prepared for review, by the supreme court of Kansas, the plaintiffs in said action No. 3624 applied to the judge of the district court of Jackson county,

Kansas, for the appointment of a receiver to take charge of the real estate involved in said action, and on said day said application was by said judge denied upon the condition that the defendant would within fifteen days therefrom execute a good and sufficient bond in the sum of $10,000, conditioned that said defendant, John S. Branner, should not during the pendency of that action commit waste, or suffer waste to be committed on the premises described in plaintiffs' petition in said cause No. 3624, and would keep the buildings on said premises insured in a reasonable amount in some good and responsible insurance company or companies, and would properly and diligently look after and care for said property and the rental of the same, and use due diligence in the collection of the rents therefrom, and keep a correct account of all rents received from said real estate, and further conditioned that said defendant would not sell or dispose of any of said real estate, or encumber the same or any part thereof, and that he would apply the rents received from said property to the payment of reasonable insurance on the same, taxes when the same became due and payable, and in keeping the property in repair, and in the payment of interest on the mortgage encumbrance on said real estate, and interest on a certain judgment which was then a lien upon said real estate, and the surplus of said rent, if any there should be, said defendant would apply the same toward the principal of said judgment or upon the mortgage indebtedness upon said real estate, and that said defendant would not permit any further liens to accrue upon said real estate, and would not permit said real estate to be sold for the payment of any of the mortgages or judgments against the same. Within the time above specified said John S. Branner caused to be executed the bond required by said order, which bond was, on the 27th day of August, 1898, approved by the clerk of said court, and the judge thereof, and which said bond was still outstanding and in full force and effect on the 29th day of March, 1899.

"10.  On December 21, 1898, the said John S. Branner and the said Josie Webb and Millie Nichols entered into a contract in writing, which contract is in words and figures as follows :

"'This agreement, made and entered into this 21st day of December, 1898, by and between John S. Branner, party of the first part, and Josie Webb and Millie Nichols, parties of the second part:

"'Witnesseth, That whereas, said party of the first part claims to be the owner of the whole of lot No. one hundred and sixty-five (165) on Kansas avenue, in the city of Topeka, in Shawnee county, Kansas;

"'And whereas, said parties of the second part claim to be the owners of the undivided one-half of said real estate;

"'And whereas, in the district court of Jackson county, Kansas, said Josie Webb recovered by the consideration of said court a judgment for the undivided one-fourth ($\frac{1}{4}$) of said real estate, in an action pending in said court in which Josie Webb was plaintiff and said John S. Branner was defendant;

"'And whereas, said Millie Nichols, in said court, by the consideration of said court, recovered a judgment against said John S. Branner for an undivided one-fourth ($\frac{1}{4}$) of said real estate;

"'And whereas, said John S. Branner is now having prepared a case-made for the supreme court of the state of Kansas, to review the decision of said district court of Jackson county, in the case of Josie Webb v. said Branner, as well as in the case of Millie Nichols v. said Branner;

"'And whereas, said Josie Webb and Millie Nichols are claiming the right to the undivided one-half of the rents and profits of said real estate, which rights to said rents and profits said party of the first part denies:

"'Now, therefore, to avoid litigation in reference to the future rents and profits, and to avoid annoyance or any inconvenience to the tenants occupying said premises;

"'It is hereby agreed between the parties hereto that each party shall pay one-half of the taxes for subsequent years during the continuance of this contract.

"'It is further agreed that, whereas there is now a plumbing bill for work done upon said premises, which is unpaid, in the sum of one hundred and twenty dollars ($120),.of which sum John S. Branner is to pay ninety dollars ($90) and Josie Webb and Millie Nichols thirty dollars ($30).

"'That party of the first part shall have the right to collect one-half of the rents from said premises and the parties of the second part the other half, from the 1st day of January, 1899, and during the continuance of this contract, it being distinctly understood that this agreement is to continue only until said cases shall be reviewed by the supreme court and decided in said court.

"'It is further agreed that any necessary repairs or expenses pertaining to said real estate accruing after January 1, 1899, shall be paid one-half by each party hereto.

"'It is hereby distinctly understood and agreed between the parties hereto that this agreement is made as a matter of convenience, and to avoid litigation, and shall in no way in the future prejudice either party, or in any manner affect their rights in said litigation.

"'And if it shall be hereafter determined that the parties of the

second part were not entitled to the rents and profits of said premises, that said parties of the second part will repay to the party of the first part all rent by them received over and above the amount expended for taxes and expenses pertaining to said building after January 1, 1899, together with interest upon the same computed annually.

"'In witness whereof, the parties have hereunto set their hands by their duly appointed agents, this 21st day of December, A. D. 1898.                          JOSIE WEBB,
                                         MILLIE NICHOLS,
                            By Keeler & Hite, their agents and attorneys.
                                         JOHN S. BRANNER,
                            By John S. Branner, jr., his agent.'

"That immediately upon the execution of said contract said Josie Webb took possession of an undivided one-fourth of said lot No. 165, and said Millie Nichols took possession of an undivided one-fourth of said lot No. 165, on Kansas avenue, Topeka, and from that time hitherto they each held possession of said undivided one-fourth and collected the rents accruing therefrom, agreeable to the terms of said contract, and said John S. Branner thereafter made no claim to said undivided half, or to the rents and profits thereof.

"11. On January 5, 1900, in cause No. 3622, and upon application of Josie Webb and Millie Nichols, the receiver was ordered and directed by the district court of Jackson county, Kansas, to deliver to said Josie Webb and Millie Nichols the possession of the undivided one-half of lot No. 167, and the north twenty feet of lot No. 169, which real estate had theretofore been adjudged to belong to said Josie Webb and Millie Nichols in said cause No. 3624, which order was by said receiver obeyed, and said Josie Webb and Millie Nichols at once took possession of said real estate, and held the possession thereof continuously down to and including June 1, 1902, and afterwards.

"12. On April 4, 1899, the defendant, John S. Branner, in cause No. 3622, filed his motion in said district court of Jackson county, Kansas, to vacate the order appointing M. W. Van Valkenburg as receiver for the following, among other reasons: 'That the court at the time of appointing said receiver had no jurisdiction of the subject-matter or property in-

cluded in said order,' which motion was by the court overruled.

"13. On September 15, 1899, the defendant, John S. Branner, served written notice upon Josie Webb, Millie Nichols, and M. W. Van Valkenburg to the effect that he objected and protested against the making of any improvements on lot No. 147 and lot No. 149, for the reason that said receiver had no power or authority to make such improvements, and that the court or judge of the district court of Jackson county, Kansas, had no power, authority or jurisdiction to order or direct any such improvements to be made.

"14. On February 23, 1900, in said cause No. 3622, the defendant, John S. Branner, moved said court for an order discharging all of the property from the custody of the receiver, and for an order directing said receiver to turn the same over to the said defendant, and to pay to him all of the money which had been received by said receiver as rents and profits of said real estate, for the reason, among others, that said receivership was being continued and said property held by said receiver without authority of law. On the same day, February 23, 1900, in said cause No. 3622, said John S. Branner moved said court to vacate and set aside and hold for naught the order therefore made appointing M. W. Van Valkenburg as said receiver, or, in the event that the court should refuse to make such order, then that said receiver be ordered and directed to release from his charge and custody all the real estate then held by him and in his possession, except said lot No. 165, the same being the only real estate involved in said cause No. 3622, which motions were by the court overruled and denied; that on March 3, 1900, in said cause No. 3622, the said defendant, John S. Branner, moved said court to turn over to him the undivided one-half of lots Nos. 147, 149, the north ten and one-half inches of 151; also all of lot No. 167, and the north twenty feet of lot No. 169, all on Kansas avenue, Topeka, for the reason, among others, that the order appointing said receiver and directing him to take charge of said property was

44—69 KAN.

without authority of law, and that said court had, theretofore, by an order directed said receiver to deliver to Josie Webb and Millie Nichols such portions of said real estate as had theretofore been adjudged to belong to them, which order had been by the said receiver carried out; that on the same day, March 3, 1900, in said cause No. 3622, the said John S. Branner moved the said court for an order discharging said receiver, for the reason that 'said receiver was appointed without authority of law; that the appointment was illegal, and that said receivership had been conducted under the orders and directions of said court to the great injury and damage of the defendant, and without authority of law,' which motions were by the said court overruled.

"15. That neither said John S. Branner, nor the plaintiff, W. R. Hazen, at any time acquiesced in the order or orders appointing and continuing said receivership, but from April 4, 1899, to the time of the discharge of said M. W. Van Valkenburg and H. C. Bowman, as receivers, continually attacked said receivership, and the order appointing said receivers, by many written motions and protests, and always upon the ground, among others, that the district court of Jackson county or the judge thereof had no jurisdiction to appoint said receivers, and that such appointment was null and void.

"16. On March 31, 1899, the defendant M. W. Van Valkenburg, acting under the appointment of March 29, 1899, served written notice on the tenants occupying said premises to pay no rent to said Branner, and immediately took possession and control of Branner's undivided half of lot No. 149, the south ten feet of lot No. 147 and the north ten and one-half inches of lot 151, and Branner's half of lot No. 165, and the whole of lots No. 167 and the north twenty feet of lot No. 169, and thereafter collected the rents and profits from all of said real estate until the 5th day of January, 1900, at which time said M. W. Van Valkenburg, under the orders and directions of the district court of Jackson county, delivered and turned.

over to Josie Webb and Millie Nichols the undivided'
half of said lots 167 and the north twenty feet of 169,
and thereafter, until November 1, 1900, was in pos-
session and control, and collected the rents and profits
of the undivided half of lot No. 149 and the south ten
feet of lot No. 147 and north ten and one-half inches
of lot No. 151, and the undivided half of lots 167
and of the north twenty feet of 169, all on Kansas
avenue.    Said Josie Webb and Millie Nichols received
the rents and profits of the undivided half of all said
property from and after the 5th day of January, 1900;
that said Van Valkenburg continued in the active con-.
trol and collection of the rents and profits of said real
estate until the defendant H. C. Bowman was ap-
pointed as a joint receiver with said Van Valkenburg,
as hereinafter found.

"17.  From the order of said court refusing to dis-
charge the said receiver and release from his custody
the real estate, the defendant John S. Branner in said
cause No. 3622 prosecuted a proceeding in error to
the Kansas court of appeals, which court reversed the
decision of the district court of Jackson county. (10
Kan. App. 217, 63 Pac. 274.)   By proper proceedings
said cause was certified to the supreme court of Kan-
sas, which court, upon argument, in all things affirmed
the decision of the Kansas court of appeals. (65 Kan.
856, 68 Pac. 1133.)

"18.  On October 18, 1900, the defendant Homer C.
Bowman was, by the judge of the district court of
Jackson county, Kansas, at chambers, appointed a re-
ceiver in said cause of Josie Webb v. John S. Branner,
No. 3622, and was directed 'to act as such receiver
jointly with M. W. Van Valkenburg'; that said Homer
C  Bowman at once qualified and entered upon the
discharge of his duty under such appointment.

"19.  That at the time of said appointment said M.
W. Van Valkenburg was in the possession and control
and collecting the rents and profits of the undivided
half of lot 149 and of the south ten feet of lot 147 and
north ten and one-half inches of 151, and of the un-
divided half of lots 165 and 167 and the north twenty

feet of lot 169 on said Kansas avenue, and the defendants Josie Webb and Millie Nichols were collecting and receiving rents and profits of the other undivided half of all said real estate, being the part they claimed to be the owners of.

"20. Shortly after the appointment of H. C. Bowman to act jointly with M. W. Van Valkenburg, he was notified by plaintiff, W. R. Hazen, that he, the said Hazen, claimed to be the owner of said real estate, and that he would hold said Bowman and all persons connected with said receivership responsible for all rents collected, on the ground that said receivership was void, and the court had no jurisdiction to appoint a receiver; and on January 1, 1901, the plaintiff, W. R. Hazen, notified the defendants H. C. Bowman and M. W. Van Valkenburg in writing of the decision of the Kansas court of appeals in reference to said receivership, and notified said parties that he was the owner of said real estate, and would hold them responsible for any rents that they might collect as receivers having charge of said property, and rents that they had theretofore collected, and notifying said parties not to collect any further rent of said premises, and that if they did he would hold them responsible for any such rent so collected.

"21. On July —, 1901, the defendant Homer C. Bowman made a written application to the judge of the district court of Jackson county, Kansas, for advice regarding such receivership. He entitled such application as follows: 'Josie Webb and Millie Nichols, plaintiffs, v. John S. Branner and W. R. Hazen, defendants, No. 3624,' as also the notice of such application served upon said parties, on which application the said judge, on October 14, 1901, made an order giving certain directions to said receiver; which order was made in cause No. 3622, Josie Webb v. John S. Branner.

"22. On October 19, 1900, when the said Homer C. Bowman was appointed receiver in said cause No. 3622, Josie Webb and Millie Nichols were in the undisputed possession of all the real estate that had theretofore been adjudged to be their property, or the

property of either of them, and were then collecting the rents thereof, and all of the real estate at that time held by M. W. Van Valkenburg as receiver, and taken possession of by Homer C. Bowman, after his appointment, was real estate belonging to W. R. Hazen, purchased by him from said John S. Branner, as aforesaid.

"23. On July 17, 1899, the said district court of Jackson county made an order in said cause No. 3622, directing M. W. Van Valkenburg, the receiver, to pay to John S. Branner, the defendant in that cause, out of the rents in his hands, $172, and to thereafter pay to him out of such rents $65 per month. The said court made a further order directing said receiver to pay to said John S. Branner $200. The said payments of $65 per month continued until October 10, 1900. All of said payments were made by said Van Valkenburg to said John S. Branner out of the rents accruing from the real estate belonging to said Branner.

"24. That within the time covered by this action, neither the plaintiff, W. R. Hazen, or John S. Branner, or any one for them, received any part of the rents and profits of any of the real estate described in plaintiff's petition herein.

"25. Neither the said John S. Branner nor the said W. R. Hazen ever consented to the appointment of said receivers or either of them or acquiesced in or ratified said appointment.

"26. That in procuring the appointment of said receivers and the continuance of said receivership in the case of Josie Webb v. John S. Branner, the defendant Millie Nichols cooperated with her sister, Josie Webb, and by agreement between said Josie Webb and Millie Nichols each was to participate equally in all the benefits accruing to either in all of the litigation between either said defendants and John S. Branner or either of said defendants and plaintiff, W. R. Hazen, and each were to bear an equal proportion of all the expenses, whether said profits or expenses accrued in either of said actions or proceedings against said John S. Branner or plaintiff, W. R. Hazen.

"27. The defendant M. W. Van Valkenburg collected no rents from any of said real estate after October 18, 1900.

"28. On Septemder 25, 1902, the district court of Jackson county, Kansas, made an order in cause No. 3624 of the records of said court purporting to discharge said Bowman as receiver, and finding that he had fully and faithfully performed all his duties as such receiver, and has fully accounted for and disposed of all receivership funds pursuant to the order of said court. No order has ever been made in cause No. 3622 discharging said Bowman or adjusting his accounts.

"29. In cause No. 3950 on the records of the district court of Jackson county, Kansas, wherein W. R. Hazen was plaintiff and the defendants in this cause and others were defendants, the same being an action to partition the real estate described in plaintiff's petition herein, the court found as one of its findings of fact that said W. R. Hazen, in procuring the conveyance of the real estate described in plaintiff's petition herein, on May 8, 1900, from John S. Branner, fraudulently attempted and intended thereby to hinder and delay or defeat Josie Webb and Millie Nichols in the collection of their judgments against John S. Branner. But in the judgment rendered in said cause it was by said court adjudged and decreed that said W. R. Hazen was the owner of an undivided one-half of the south ten feet of lot No. 147 and the undivided half of lot No. 149 and the undivided half of the north ten and one-half inches of lot No. 151, and of the undivided half of lot No. 165 and of the undivided half of lot No. 167 and of the undivided half of the north twenty feet of lot No. 169, and other lands, subject to certain mortgage liens and the judgment liens of Josie Webb and Millie Nichols.

"30. No part of the rents collected within the time covered by this suit was paid out by reason of any consent, acquiescence or approval on the part of the plaintiff herein, and was disbursed with full knowledge that the plaintiff was denying the right of the defendants to collect or disburse said rents, and that

said plaintiff was prosecuting proceedings in court to set aside said receivership on the ground that the court had no jurisdiction over the subject-matter and that the order appointing said receiver was void.

"31. From October 18, 1900, to June 1, 1902, the defendant Homer C. Bowman, acting under the said order appointing him a receiver in said cause No. 3622, collected from the real estate so belonging to the plaintiff, W. R. Hazen, rents amounting to $5383, of which sum he collected for rents accruing from the undivided one-half of lot No. 165 so belonging to W. R. Hazen, $1375.63, and the balance from the other property described in the petition, a statement of which is as follows : (Statement omitted.)

. "32. From the time of the appointment of Homer C. Bowman up to June 1, 1902, he expended under the orders of the court that appointed him, upon lot No. 165, in paying taxes, insurance, repairs, interest on encumbrances, janitor's services, and other necessary expenses in and about said building, $791.84 ; and upon the other property, $3055.80, a statement whereof is as follows : (Statement omitted.)

"33. The reasonable value of the services of said Homer C. Bowman in caring for and managing said lot No. 165 was $200.

"34. By an order made in cause No. 3624 by the district court of Jackson county, Homer C. Bowman was directed to pay $700 of the judgment rendered therein against W. R. Hazen and John S. Branner, which sum he paid.

"CONCLUSIONS OF LAW.

"1. The appointment of M. W. Van Valkenburg as receiver in cause No. 3622 was void as to all real estate described in the order of appointment, except lot No. 165, as the court had 'no power to appoint a receiver for other lands of the defendant not involved in the suit.'

"2. Such appointment as to lot No. 165 was erroneous but not void.

"3. The appointment of Homer C. Bowman as receiver was auxiliary to the appointment of M. W.

Van Valkenburg, and was void as to all real estate except lot No. 165, and as to that it was erroneous, but not void.

"4. The defendants herein Homer C. Bowman, Josie Webb and Millie Nichols should be charged with the receipt of $5383, with interest, and should be credited as follows:

| | |
|---|---|
| Expenses on lot No. 165 | $791 84 |
| Services | 200 00 |
| Amount paid on judgment of $700 against Hazen | 383 79 |
| Total | $1,375 63 |

"5. Interest should be computed upon the money received for rents for all property except lot No. 165 from the date of receipt.

"6. Plaintiff should have judgment against all the defendants except M. W. Van Valkenburg, principal and interest to date, for $4127.49, and for costs.

"7. M. W. Van Valkenburg should have judgment for costs."

Exceptions were taken to the findings of fact and conclusions of law by the defendants, and the plaintiff excepted to the third conclusion of law so far as it pertained to lot 165, and to the fourth conclusion of law so far as the same allowed any credits to the defendants. Judgment was rendered in favor of the plaintiff, Hazen, against Josie Webb, Millie Nichols and H. C. Bowman in the sum of $4127.59. Each of the parties alleges error.

*Henry Keeler*, *Clifford Histed*, and *Rossington; Smith & West*, for plaintiffs in error.

*A. W. Benson*, and *W. R. Hazen*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a collateral attack on the appointment and action of receivers. To recover from them and those at whose instance they were appointed

and acted it must appear that they collected the rent money without authority and that their action to that extent was absolutely void.   The history of the case and the facts upon which the trial court based its judgment are included in the foregoing statement, and they are so elaborately and clearly stated as to render a restatement and discussion of them unnecessary.   Although some complaint is made, it may fairly be said that the testimony in the record substantially supports all the material findings.   They disclose that in the action in which the receiver was appointed nothing was involved but the title of lot No. 165, on Kansas avenue, in the city of Topeka. The title of Branner,· who was Hazen's grantor, to one-half of the lot was not disputed, and the only controversy was whether Josie Webb and Millie Nichols owned the remaining one-half, and that part they ultimately recovered.   In that case the decision in the trial court had been given in their favor, and they had acquired possession of their shares in the lot when the receiver was appointed.

The trial court undertook to vest the receiver with the custody of other valuable property which was in no way involved in the action wherein the appointment was made.   Just why the receiver was given possession of Branner's half of lot No. 165, when his right to it was conceded, is not easily understood ; but when the court undertook to reach out and take custody and control of property which was not the subject-matter of the controversy, it went outside its appointed sphere and its orders in respect to such property were nullities.   The court had no more authority over that property than it would have had over the square on which the state-house stands.   The fact that the other real estate, which may be termed

the outside property, was or had been in litigation between the same parties did not enlarge the court's jurisdiction in the case in which the receiver was appointed. The outside property was entirely distinct from that involved in the action wherein the receiver was appointed, and the orders of the court relating to the former were in excess of its jurisdiction, and to that extent, at least, absolutely void.

This question was directly adjudicated, first in the court of appeals, and later when the decision of that tribunal was affirmed in this court. (*Branner v. Webb*, 10 Kan. App. 217, 63 Pac. 274; *Webb v. Branner*, 65 Kan. 856, 68 Pac. 1133.) Since that determination there has been no excuse for contention about the invalidity of the receivership so far as the outside property was concerned. The orders appointing and directing the receivers were incurably void, and afforded no protection to the receivers or those at whose instigation they were acting.

Some of the money wrongfully taken from Branner through the medium of the receivership was returned to him by order of court, and because of this it is contended that Branner and his grantee cannot raise the question of invalidity, and that Hazen is precluded from recovering in this action. The money returned to Branner was his own, and at no time did he or Hazen acknowledge the authority of the receiver or acquiesce in his action. They protested persistently, and at every stage of the proceedings, that there was no jurisdiction to appoint the receivers, and that their acts were utterly void. As the orders were nullities, they may be attacked collaterally as well as directly, at any time, by anybody, and in any proceeding where their validity is in issue. (*In re Dill, Petitioner*, 32 Kan. 668, 691, 5 Pac. 39, 49 Am. Rep. 505; *Gille v.*

*Emmons*, 58 id. 118, 48 Pac. 569, 62 Am. St. Rep. 609 ; *Whitmore v. Stewart*, 61 id. 254, 59 Pac. 261 ; *Johnson v. Powers*, 21 Neb. 292, 32 N. W. 62 ; *State v. District Court*, 21 Mont. 155, 53 Pac. 272, 69 Am. St. Rep. 645 ; *The People v. Weigley*, 155 Ill. 491, 40 N. E. 300 ; *Smith v. Los Angeles etc. R'y Co.*, 98 Cal. 210, 33 Pac. 53 ; *Staples v. May*, 87 id. 178, 25 Pac. 346 ; *Kreling v. Kreling*, 118 id. 421, 50 Pac. 549 ; *Port Huron & Gratiot R. W. Co. v. Judge of St. Clair Circuit*, 31 Mich. 456 ; *People v. Jones*, 33 id. 303 ; *Spoors v. Coen*, 44 Ohio St. 497, 9 N. E. 132 ; *Thurber v. Miller et al.*, 11 S. Dak. 124, 75 N. W. 900 ; *Vila v. Grand Island Electric Light I. & C. Storage Co.*, 94 N. W. [Neb.] 136, 63 L. R. A. 791 ; Van Fleet's Collateral Attack, § 16 ; 17 Encyc. Pl. & Pr. 752.)

The orders did not give the receivers even color of authority as to the property not in litigation, and they were therefore trespassers, and were liable for all the moneys unlawfully collected. The plaintiffs in that action, who procured their appointment and aided and cooperated with them in wrongfully taking and appropriating the rents from the outside property, were equally liable as trespassers for the wrong done.

It is contended that they should have been credited with the money disbursed, especially as much of it was used for the benefit of the owners. Trespassers are not in a position to make such a claim. Those who wrongfully seize and hold the property of another cannot excuse themselves by showing that it was subsequently used for some good purpose, or that the use made of it was, to some extent, beneficial to the wronged party. Such trespassers cannot compulsorily constitute themselves disbursing agents of the one whose funds or property they have wrongfully seized ; nor can they make themselves his creditors by paying

his debts without his request or consent. It cannot be said that the measure and extent of recovery adjudged by the trial court was erroneous. As tending to sustain the ruling the following cases are cited: *Shaw v. Rowland*, 32 Kan. 154, 4 Pac. 146; *Hagar v. Haas*, 66 id. 333, 71 Pac. 822; *Otis v. Jones*, 21 Wend. 394; *Higgins v. Whitney*, 24 id. 379; *Kerr v. Mount*, 28 N. Y. 659; *Wehle v. Butler et al.*, 61 id. 245; *Roff v. Duane*, 27 Cal. 565; *Olsen v. Upsahl*, 69 Ill. 273; *Garrigan v. Knight*, 47 Iowa, 525; *Hall v. Ray*, 40 Vt. 576, 94 Am. Dec. 440.

In his cross-petition in error Hazen complains of the rulings which denied to him the recovery of $1375.63, being the rents collected from lot No. 165. This was done upon the theory that the order appointing receivers as to that property, although erroneous, was not void. The ruling must be sustained. While the application to take possession of Branner's half of the lot to which the opposing parties made no claim was without merit, it cannot be said that the court was wholly without jurisdiction in making the appointment. There was joint ownership of the lot in litigation. The possession given under the agreement was conditional upon the decision to be made in the case by the reviewing court. Aside from the question of paying taxes, repairs might be necessary, and the parties in interest might not be able to agree with respect to the necessity and extent of such repairs. Circumstances can be imagined which afford reason for a receiver in a case of joint ownership of property, the title of which was in litigation, and, hence it cannot be said that the court was without jurisdiction, nor that the orders were absolutely void. As to this lot Hazen can only recover upon the theory of a lack

of power in the court to appoint a receiver, and as that cannot be held, the trial court rightly refused him the rents.

The judgment of the district court will be affirmed.

All the Justices concurring.