SCOTT, Intervener, v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit.　June 4, 1895.)

No. 575.

1. RAILROAD FORECLOSURE—RECEIVERSHIP—PROPERTY NOT COVERED BY MORT-GAGE.

A court of equity has no power, upon a bill for the foreclosure of a rail-road mortgage, to take into its custody or control, through a receiver or otherwise, property not covered by the mortgage, nor to make any order that will hinder or delay creditors in subjecting property not covered by the mortgage to the payment of their debts.

2. EQUITY—RECEIVERSHIP—HINDERING OR DELAYING CREDITORS.

Certain stockholders, bondholders, and general creditors of the N. Ry. Co. filed a bill against that company, alleging that its earnings were insufficient to pay expenses and fixed charges; that it owed a large floating debt; that it was important to its creditors and the public that the unity of the line formed and controlled by the company should be preserved; that, un-less the property of the company were taken into judicial custody, it would be broken up, and its value dissipated, by the enforcement of their rem-edies by individual creditors, and the forfeiture of leases by other com-panies; and thereupon prayed for the appointment of receivers to hold the property of the company in order that it might be managed and disposed of to the best advantage, and that all the obligations of the company might be discharged. Upon consent of the company, receivers were appointed, and an order made that they should pay current expenses, sums due to other connecting roads, and all sums due for wages within seven, and sup-plies and materials within six, months. A little more than six months be-fore the appointment of the receivers, one S. recovered a judgment against the company for necessary supplies furnished to it, the indebtedness hav-ing accrued some years earlier. S. intervened in the suit in which the re-ceivers were appointed, asking leave to levy an execution on certain lands on which his judgment was a lien. *Held*, that the court had no power to hin-der and delay creditors of the company by withdrawing its property in-definitely from the operation of their remedies, or by excluding from the benefit of the trust it had assumed any class of creditors or debts accru-ing before any particular time, and that leave should be given to S., if not promptly paid by the receivers, to levy an execution on the property sub-ject to the lien of his judgment.

Appeal from the Circuit Court of the United States for the Dis-trict of North Dakota.

This was an intervening petition, filed by Charles Scott in the con-solidated cause of the Farmers' Loan & Trust Company, P. B. Winston, and others against the Northern Pacific Railroad Com-pany, praying for the payment of a judgment held by him as a pref-erential debt, or for leave to issue an execution against property of the railroad company in the hands of the receivers.　The circuit court dismissed the petition.　The intervener appealed.　Reversed.

On the 15th day of August, 1893, there was filed in the circuit court of the United States for the Eastern district of Wisconsin a bill in equity in which P. B. Winston, the Farmers' Loan & Trust Company, and others were named as plaintiffs, and the Northern Pacific Railroad Company was named as de-fendant.　58 Fed. 257.　A copy of this bill was thereafter, on the same day, filed in the United States circuit court for the district of North Dakota.　The United States circuit court for the Eastern district of Wisconsin was the court of primary jurisdiction in the case, and the United States circuit court for the district of North Dakota, and other districts in which similar bills were filed,

are courts of ancillary jurisdiction, and in the foreclosure suit hereafter mentioned these courts sustained towards each other the same relation.

The bill alleged that some of the complainants were owners of some of the stock and bonds of the Northern Pacific Railroad Company; that others were general creditors of the company; that the Farmers' Loan & Trust Company was trustee in certain mortgages made by the company; gave a history of the road and its indebtedness; averred that its earnings were inadequate to pay its operating expenses and fixed charges; that it owed a large floating debt; "that the said railroads and property, as now held and controlled by the defendant, as aforesaid, form an important trunk line, which constitutes one of the most important ingredients of its value, and that its severance would result in a ruinous sacrifice to every interest in the property; and that unless this court, in view of the impending and inevitable defaults as aforesaid, will deal with the property as a single trust fund, and take it into judicial custody for the protection of every interest therein, individual creditors will assert their remedies in different courts in said several counties; that a race of diligence will result, and judgments and priorities will be attempted; that levies and attachments will be laid upon engines and cars of the defendant, which will greatly interfere with, and ultimately prevent, the defendant from the proper discharge of its duties as public carrier; that the United States mails will be stopped; that the defendant will be unable to fulfill its charter duties to the government of the United States and to connecting railroads; that commerce between the several states will be interfered with; that communication between many cities, towns, and places which are wholly dependent upon said railroads will be interrupted; that serious and irreparable injury to their trade and commerce and their general prosperity will result; that divers of the lessors of the railroads now operated by the defendant as aforesaid will enforce the re-entry covenants of their leases; that a continued default of the mortgage debts will, by the terms of the various mortgages, produce the immediate maturity of all the bonds secured by said mortgages; that a vast and unnecessary multiplicity of suits will result, and a most important and valuable property will be dismembered by the clashing decrees of many courts at the suits of separate creditors; that said property may be shielded and preserved as a valuable single trust property by adequate judicial protection, and the sums due and to become due to the defendant's bondholders and creditors secured and ultimately paid in full. But your orators aver that unless such a course is pursued, to wit, the taking of the property into judicial custody, said property will be dismantled, dissipated, and dismembered, and vast sums of money will be lost to the various creditors and stockholders of said company, and the public interests seriously affected. * * *" To avert these disasters, and to prevent the general creditors of the company from collecting their debts in due course of law, the bill prayed for the appointment of receivers, and averred "that, if the defendant's said railway system and the lands so remaining to it can be taken into judicial custody, and preserved and managed as a unit, said remaining lands can be sold from time to time for prices equal to their constantly increasing value, and that the proceeds that will be received from such sales, together with the earnings of the defendant's railway system, will be more than sufficient to pay and discharge all the defendant's obligations to its creditors, and preserve for its stockholders said railway system, freed from debt."

As is customary in cases of this character, the railway company entered a voluntary appearance to the bill, and confessed all its allegations, and consented to the appointment of its president and two other persons as receivers. The order appointing the receivers provided they should pay: "(1) All current expenses incident to the creation or administration of this trust, and to the operating of said railroads and properties. (2) All sums due or to become due connecting or intersecting lines of railroads arising from the interchange of business, and for track service of other railroads used by said Northern Pacific Railroad Company in the operation of its lines, traffic, and car-mileage balances, and all amounts now due from said Northern Pacific Railroad Company for taxes and assessments upon the property or any part thereof. (3) The amounts due to all operatives and employés of said company for any services rendered to said company since the 15th day of January, A. D. 1893. (4) All

amounts due for supplies and material purchased and used in operating said railroads, or due by said company for supplies furnished to laborers, and credited against their labor, since the 15th day of February, A. D. 1893." [1]

On the 18th day of October, 1893, there was filed in the United States circuit court for the district of North Dakota, by the Farmers' Loan & Trust Company, a bill in equity against the Northern Pacific Railroad Company to foreclose certain mortgages on the road and property of the defendant company on which default had been made in the payment of interest. In this case the same receivers were appointed that were appointed in the first case, and upon motion the two suits were consolidated. The order relating to the payment of debts was the same in both suits. On the 26th of May, 1892, Charles Scott, the intervener, brought suit against the Northern Pacific Railroad Company in the district court of Cass county, N. D., and on the 14th day of February, 1893, recovered judgment against the company for $3,115.50. An appeal was taken from this judgment by the defendant to the supreme court of the state, which was afterwards dismissed. The cause of action upon which the judgment was rendered was founded upon the same contract, and was of

---

[1]NOTE. As a part of the history of the receivership under this bill it may be stated that a similar bill was filed in the United States circuit court for the district of Minnesota on the same day, and like orders made thereon. Afterwards, when the question of the sufficiency of the bill to justify the appointment of receivers came before the United States circuit court for the district of Minnesota, that court held the bill did not state a case of equitable cognizance, and discharged the receivers, and dismissed the bill. Thereupon the Farmers' Loan & Trust Company filed its bill against the Northern Pacific Railroad Company to foreclose certain mortgages in respect of which it was alleged the company had made default in the payment of interest, and prayed for the appointment of receivers, which prayer was granted, and the same persons appointed receivers who had previously been appointed by the court of primary jurisdiction in Wisconsin. The order of the circuit court in Minnesota appointing the receivers in the foreclosure suit contained the following, among other provisions: "And it appearing to the court that the defendant company owes debts and has incurred liabilities which the holders thereof could, without any interference with the legal or equitable rights of the complainant under the mortgage set out in the bill, collect by proceedings at law from said defendant, by seizing its rents, income, and earnings, and in other lawful modes, if not restrained from so doing by this court, and that it would be inequitable and unjust for the court to deny to said creditors their legal right to collect their several debts by appointing receivers to take and receive the earnings of said road during the pendency of this suit, as prayed by the complainant, without providing for the payment of such debts and liabilities: It is therefore declared that this order appointing receivers herein is made upon this express condition, namely: That all debts, demands, and liabilities due or owing by the defendant company which were contracted, accrued, or were incurred in this district, or are due or owing to any resident of this district, for ticket and freight balances, or for work, labor, materials, machinery, fixtures, and supplies of every kind and character, done, performed, or furnished in the repair, equipment, or operation of said road and its branches in the state of Minnesota, and all liabilities incurred by the said company in the transportation of freight and passengers, including damages for injuries to employes or other persons, and to property, which have accrued, or upon which suit has been brought or was pending, or judgment rendered in this state within twelve months last past, and all liability of said company to persons or corporations who may have heretofore become residents or citizens of this district who may have become sureties for said company on stay or supersedeas bonds, or cost bonds, or bonds in garnishment proceedings, without regard to the date of said bonds, or whether such bonds were furnished in actions or proceedings pending within this district or elsewhere, together with all debts and liabilities which the said receivers may incur in operating said road, including claims for injury to persons and property as aforesaid, shall constitute a lien on said railroad and all property appurtenant thereto, in this district, paramount to the lien of the mortgages of which foreclosure is sought in the bill in this case; that said railroad shall not be released or discharged from the liens hereby declared until such debts and liabilities are paid. The receivers are authorized and directed to pay all such debts and liabilities, as the same shall accrue, out of the earnings of the road, if practicable, or out of any funds in their hands applicable to that purpose; and, if not sooner discharged, then the same shall be paid out of the proceeds of the sale of said road." The order relating to the payment of debts in the district of Minnesota, being made by a court of ancillary jurisdiction, was restricted in its operation to debts due to citizens of that district, or debts contracted or payable in that district. The validity of the order was not contested, and the debts embraced therein were paid by the receivers from moneys derived from the earnings of the road and other sources.

the same character, as that upon which judgment was rendered in favor of Joseph Lamont, the defendant in error in case No. 594 (Northern Pac. R. Co. v. Lamont, 69 Fed. 23), the only difference being as to the date of the accrual of the indebtedness; the indebtedness in this case having accrued under the contract prior to the 1st day of January, 1889. On the 25th of November, 1893, the intervener filed his petition in the court below, setting up the foregoing facts, and alleging that his judgment was a lien on certain real estate of the Northern Pacific Railroad Company in Cass county, N. D., which was not included in any of the mortgages sought to be foreclosed; that he could have made the amount of his judgment by suing out execution thereon, and selling the land of the defendant, and would have done so but for the appointment of receivers in this case.

The record in this case and in that of Northern Pac. R. Co. v. Lamont (No. 594) 69 Fed. 23, are very much mingled. As they grow out of the same transaction, and are of the same general character, they were probably heard together in the court below. The intervener claimed in the court below that his judgment should be allowed and paid as a preferential debt, or that he should have leave to sue out execution on his judgment, and sell the lands of the defendant company not included in the mortgages in suit. There was a reference to a master, testimony was taken, and upon a final hearing the court below dismissed the intervener's petition, who thereupon appealed to this court.

Charles E. Joslin, for appellant.

C. W. Bunn (H. C. Truesdale and Turner, McClure & Rolston, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Although some technical objections are taken to intervener's petition, we think it sufficiently appears from an examination of the whole record that the intervener did set up that his judgment was a lien on certain real estate of the railroad company which was not embraced in any of the mortgages in suit, and that he desired the leave of the court to sue out execution on his judgment, and sell such lands, which were particularly described. As the intervener will be satisfied with this relief, we need not consider the question whether his judgment ought to be paid as a preferential debt. A special prayer for this relief was not necessary. The petition concluded with a general prayer "for all other further and proper relief," and that was sufficient. It sufficiently appears from the record before us that the intervener's judgment was and is a lien on the lands of the railroad company described in the petition, and that the lien of the mortgages which the complainant the Farmers' Loan & Trust Company seeks to foreclose does not extend to or embrace such lands. When a bill is filed to foreclose a mortgage, the court may, upon a proper showing, appoint a receiver to take into his possession and control the mortgaged property. But the jurisdiction possessed by a court of chancery to foreclose a mortgage and to appoint a receiver for the mortgaged property pending the foreclosure gives it no jurisdiction or power to seize or take into its custody or control, through a receiver or otherwise, property of the debtor which is not covered by the mortgage. Nor can the court in such a suit rightfully make any order that will prevent, hinder, or delay the other creditors of the mortgagor from subject-

ing the property not included in the mortgage to the payment of their debts.   A mortgagee has the undoubted right to subject the mortgaged property to the payment of the mortgage debt, to the exclusion of all general creditors of the mortgagor and persons holding junior liens thereon; but as to all property of the debtor not included in the mortgage the mortgagee is in no better plight than if he had no mortgage.   It is clear, therefore, that, so far as relates to the receivership in the foreclosure suit, the intervener was entitled to an order discharging the land mentioned from the custody of the receivers, and granting him leave to sell the same on execution to satisfy his judgment.

The next inquiry is, was the intervener deprived of his right to collect his judgment by due course of law by reason of the bill filed on the 15th day of August, 1893, and the orders made in that suit? That was not a bill to foreclose a mortgage or enforce any other lien on the property of the company.   Though the railroad company was made a defendant to the bill, it is obvious that it was not an adversary proceeding, and that it is to be viewed precisely as if the company itself had filed the bill.   The bill did not contemplate the sale of the road or the dissolution of the corporation.   Briefly, it alleged the company owed more debts than it was then ready to pay, and that, unless the courts shielded and preserved its property by taking it into its judicial custody, large sums of money would be lost to its creditors and stockholders, and the public interests injuriously affected; but that, if the court would take the road and its property into its judicial custody, and preserve and manage "the same as a unit," the same would "be more than sufficient to pay and discharge all the debts and obligations to its creditors, and preserve to its stockholders said railway system freed from debt."   The bill, it is evident, contemplated the continuance of the receivership until the court received money enough from the sales of the lands of the company, and from the earnings of the road, to pay all the debts of the company, and, when this had been accomplished, it was to hand the property over to the stockholders freed from debt.   It placed the property of the company beyond the reach of its creditors, and put it under the management of the chancellor until the earnings and income therefrom should be sufficient to pay the debts of the company.   The bill gave no intimation of the length of time that would be required to enable the chancellor to accomplish this task.   The management of the road by its president and board of directors was not assailed; on the contrary, the company was eager to have its president appointed a receiver, and it was done.

It is obvious that if an individual or private business corporation had conveyed its property to another for the same purposes and upon the same trusts that the court was asked to take this property, and did take it, the law would have stamped the conveyance as one made to hinder and delay creditors, and fraudulent and void for that reason.   In the case of Glenn v. Liggett, 47 Fed. 472, 474, Judge Thayer said:

"Ordinarily, and in the absence of a statute expressly authorizing such a proceeding, courts of equity have no greater control over the affairs of a private

corporation when it becomes insolvent than they have over the affairs of an individual. They are not courts of bankruptcy."

And see, to the same effect, Silver Mines v. Brown, 58 Fed. 644, 7 C. C. A. 412, 19 U. S. App. 203; Walters v. Trust Co., 50 Fed. 316.

Assuming, but not deciding, that the bill presented a case of equitable cognizance because the defendant company was a quasi public corporation, nevertheless it was clearly one which looked to the payment of all the debts of the company. It did not suggest that any particular creditor or class of creditors was more deserving of protection than other creditors. Certainly, on such a bill, the court had no authority to bar or exclude from the benefits of the trust it had assumed any class of just and valid debts due and owing from the company. If it could, under such a bill as this, by a stroke of the pen, bar all debts the company owed which were contracted six months before the receivers were appointed, it could bar all the debts it owed down to the day the receivers were appointed. The order limiting the payment of debts to those which accrued within six months preceding the appointment of the receivers conflicted with the declared object of the bill, which averred that by placing the property in "judicial custody" it would, under such management, "be more than sufficient to pay and discharge all the defendant's obligations to its creditors. * * *" The theory of the bill was that all of the debts of the company were to be paid, and none repudiated. Nor could the court, on such a bill, annul or vacate any valid judgment or other lien on the company's property. A court of bankruptcy could not exercise such powers, and it will not be claimed that under such a bill as this the court possessed larger powers than a court of bankruptcy. Assuming that the bill was one that could be maintained, it was the duty of the court either to order the receivers to pay the intervener's judgment, or grant the intervener leave to sue out execution on his judgment, and sell the land upon which it was a lien. The court has no power to hinder and delay a creditor indefinitely in the collection of his debt, or to deny to him the right to enforce any lien he may have upon the property of his debtor for its payment. If such bills are to be maintained, it would seem the practice under them ought to conform as near as may be to the practice in bankruptcy. If an assignee in bankruptcy desires to preserve to the estate property upon which a creditor of the bankrupt has a valid lien, he must pay the debt, and, failing to do so, the creditor has a right to have his lien enforced. Kimberling v. Hartly, 1 Fed. 571, 1 McCrary, 136.

The decree of the circuit court is reversed, and the cause remanded, with instructions to enter an order that, unless the receivers shall pay the intervener's judgment within 60 days after the mandate of this court is filed in the circuit court, the intervener may sue out execution on his judgment, and sell thereon all the lands of the Northern Pacific Railroad Company in the county of Cass, in the state of North Dakota, upon which his judgment is a lien, and which are not included in the mortgages which are being foreclosed in this suit.