## In re RICHARDSON'S ESTATE.

(District Court, N. D. Texas, San Angelo Division. December 4, 1923.)

No. 346.

1. **Bankruptcy ⚖=20(2)—Bankruptcy court cannot take property from lawful possession of state court.**

A state court, having jurisdiction, which has taken possession of the property of a debtor, by its receiver, more than four months prior to the filing of a petition in bankruptcy by or against the debtor, has exclusive possession of the property, and the bankruptcy court is without power to order it turned over to the trustee.

2. **Receivers ⚖=3—Power to appoint is ancillary to real controversy between parties.**

The power of a court to appoint a receiver is based on the fact of real litigation between the parties, in which it becomes necessary, in the opinion of the court, to take possession of property to which the controversy relates, in order to preserve or administer it, and if the parties have no real controversy, and, desiring no lawful relief, institute a suit and have a receiver appointed, the appointment is void, and the receiver must be treated as the agent of the parties.

3. **Receivers ⚖=9—Appointment not authorized at suit of general creditors.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, as construed by the Supreme Court of the state, does not authorize the appointment of a receiver at suit of general creditors having no lien, nor is such appointment authorized by the general law or rules of equity.

4. **Receivers ⚖=11—Property not involved in litigation not subject to receivership.**

A court cannot appoint a receiver to take charge of property not involved in the litigation, or to take charge of all of a debtor's property, including that which is not, as well as that which is, specially bound for payment of the claim in suit.

5. **Receivers ⚖=6—Simple contract creditor must exhaust remedy at law.**

A simple contract creditor cannot invoke the aid of a court of equity until he has exhausted his remedies at law, chief among which is the recovery of a judgment at law and return of an execution unsatisfied.

6. **Receivers ⚖=31—Consent of defendant does not invalidate appointment, which the court had power to make.**

Where the court has jurisdiction to appoint a receiver in a particular case, the appointment is not invalid because the defendant entered his voluntary appearance and answered, admitting the allegations of the complaint.

7. **Receivers ⚖=67—Receivership cannot be extended to property not involved in suit.**

Property not involved in the suit, as property not embraced in the complainant's mortgage, nor protected from the remedies of other creditors by any contract or legal lien, is not properly in the hands of a receiver.

8. **Receivers ⚖=31—Consent of solvent individual does not confer jurisdiction to appoint receiver.**

Administration of the affairs of a solvent individual is not a recognized head of equity jurisdiction, and such want of jurisdiction over the subject-matter is not removed and jurisdiction conferred by consent of the defendant to the appointment of a receiver.

9. **Receivers ⚖=9—Cannot be appointed on petition of owner of property.**

A receiver cannot be appointed on petition of the owner of the property, whether a private person or a corporation.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Receivers ☞59—Order appointing receiver, made without jurisdiction, is void, and may be collaterally attacked.**

If it appears on the face of the proceedings that a court's order appointing a receiver was without authority of law, and therefore void, it may be attacked or disregarded whenever it comes collaterally in question.

**11. Bankruptcy ☞20(2)—Trustee held estopped to reclaim property from state court.**

The appointment of a receiver for the property of an individual defendant, recited in the order to be solvent, for the purpose of administering his property, and with the effect of preventing individual creditors from enforcing their claims at law, is beyond the powers of a court of equity; but where such action was taken by a state court in a creditor's suit, in which one complainant held a lien on a small part of the property, which gave the court jurisdiction over such part, though without authority it extended the receivership to all of defendant's property and continued its administration for 16 months, with the acquiescence of defendant and all his creditors, who proved their claims in the suit, defendant is estopped to question the validity of such action by filing a voluntary petition in bankruptcy, and such estoppel extends to the creditors, and to his trustee as their representative.

In Bankruptcy. In the matter of George Richardson, bankrupt. On petition of T. R. Logan, trustee, for summary order to require M. B. Pulliam, receiver of a state court, to turn over property. Denied.

Frank L. Snodgrass and J. B. Dibrell, Jr., both of Coleman, Tex., and W. A. Anderson, of San Angelo, Tex., for trustee.

Wright & Harris and Hill & Hill, all of San Angelo, Tex. (W. A. Wright and J. W. Hill, both of San Angelo, Tex., of counsel), for state receiver.

ATWELL, District Judge. On February 10, 1922, 15 creditors of George Richardson filed a joint petition against him in the state district court of Tom Green county, Tex. The aggregate of their claims was $116,177.90. They were all unsecured contract creditors except one, whose claim was $45,000, secured by a lien on several tracts of land, aggregating 5,120 acres.

The petition alleged that Richardson was solvent and that "the properties in his hands and owned by him are sufficient in quantity, value, and amount to pay all of his creditors of every nature and description, and thereafter leave to said defendant property of the value of over $200,000, if handled through a receiver;" that "it is necessary for the preservation of said properties that said receivership be granted to preserve properties under the allegations made in this petition;" that "unless a receiver be appointed the creditors of the estate of said defendant may suffer irreparable injury and said property will not bring its just and reasonable value, and said live stock will not be looked after and cared for, so as to realize the just and fair value of the same;" that Richardson was possessed of real estate of the approximate value of $543,000, of personal property of the approximate value of $333,-206.67, or total assets of $876,206.67; that he owed $668,556.58; that there was an equity, therefore, for him of $208,650, and that the estate could be administered by the court through its receiver, and there would be a surplus left for the defendant of $200,000; that on

that date he owed $7,000 interest, and to the state of Texas $1,390.68 and $17,920; that two judgments had been secured against him, one for $945.53, and one for $14,171.83; that these five items demanded immediate attention, and that, if they were not settled and arranged, a large part of the property would be sacrificed, and a large block of the indebtedness, having accelerated maturity, would likewise become due and payable.

The petitioners prayed "for judgment against the defendant, for foreclosure of the mortgage liens therein alleged, and that upon hearing the court appoint a receiver, conferring upon him such powers as the court in its discretion may find necessary and proper." There was an exhibit to the petition, setting out in particularity the defendant's property. The only part against which there was any lien in favor of either one of the plaintiffs was the 5,120 acres.

On February 10, 1922, the same date that the petition was filed, the defendant filed a waiver of service and agreed to enter his appearance at the next term of the court. On the same date, February 10, 1922, the defendant answered as follows:

"This defendant is the owner of all the property as therein set out [in the application for a receiver], but this defendant avers that the reasonable value of same is in excess of the values therein stated, to a large amount, said excess being not less than $100,000 in reasonable fair value of said property. (2) That his liabilities as therein set out are substantially correct in the aggregate. (3) That there is no valid and sufficient ground for the appointment of a receiver in fact, and he asks the court to hear evidence on the grounds set out in said petition, and deny the said application, and this he is ready to verify, and prays judgment of the court that he go hence with his costs."

On the same day the court entered an order appointing N. S. Rives receiver. In this order the court found:

"That the estate of George Richardson is a solvent estate, and that it has assets that in the court's judgment are good and sufficient to pay all the debts of the said George Richardson of every nature and description, and leave a balance for the said George Richardson in excess of $200,000, according to a fair valuation, can be realized upon the assets and property of the said George Richardson."

(2) "The court finds that a receiver is necessary for the purpose of having the property of the said George Richardson realize its fair and just values, pay off and satisfy all of the creditors of the said George Richardson, and preserve his said estate from waste, destruction, loss, and injury, which, because of the present temporary financial conditions existing in this country would, if this receivership is not granted, result in great loss to the estate of the said George Richardson and to the injury and loss of his creditors."

The court then set out in the said order a list of the properties belonging to the said Richardson. The salary of the receiver was fixed at $5,000 per annum.

The transcript from the state district court, showing the proceedings in that court from said date to the 8th day of November, 1923, covers 600 pages and shows many interventions by creditors, the qualification of the receiver, his bond, his application to issue receiver's certificates, the payment of said certificates, petitions for the sale of personal property, and for the sale of some real estate, confirmations of such sales, the resignation of the first receiver, the appointment of M. B. Pulliam,

the present receiver, his qualification, reports of both receivers of receipts and expenditures, and motion by the defendant to stay proceedings and to dismiss the same, and the court's refusal so to do and judgment thereon, and many other formal orders. It also contains a motion of the trustee in bankruptcy, Logan, advising the court of the adjudication of the said George Richardson, bankrupt, by the United States District Court for the Northern District of Texas, at the San Angelo Division, in cause No. 346, bankruptcy, on June 23, 1923.

On that date the defendant in the original suit filed a voluntary petition in bankruptcy and was adjudged a bankrupt. The transcript contains the order of the presiding judge on the motion of the trustee, as follows:

"On this day came on to be heard the motion of T. R. Logan, trustee in bankruptcy, of the estate of George Richardson, bankrupt, calling the court's attention to the adjudication in bankruptcy and appointment of trustee, and for order directing the receiver to deliver the property in the hands of the receiver of this court to said trustee in bankruptcy, and to stay futher proceedings herein; and the plaintiffs and receiver and the several interveners in this cause having filed answers thereto denying the right of the trustee in bankruptcy to the possession and administration of said properties, and the court having heard and considered said motion and answers, and the evidence thereon, and the argument of counsel, finds the facts and law are with the receiver and the plaintiffs and interveners on said motion. It is therefore ordered, adjudged, and decreed by the court that the motion of the said T. R. Logan, trustee in bankruptcy, of the estate of George Richardson, be and is hereby in all things overruled and denied, and all costs incurred by said motion is taxed against said trustee, to which judgment of the court said trustee in bankruptcy in open court excepts."

That neither the application of the defendant to the district court to stay proceedings nor the motion of the trustee were pursued further and each became a final judgment. On November 17, 1923, the trustee filed in this court his petition for a summary order and injunction to require Pulliam to turn over to him the George Richardson estate. On the same date this court ordered the issuance of a notice to said Pulliam to appear and show cause, if any he had, why he should not be required to do as the trustee prayed.

In the application for said order the trustee declared that the appointment of the receiver by the state court was void; that it was accomplished through collusion of Richardson and his creditors; that the proceeding was for the purpose of preventing the bankruptcy courts of the United States from acquiring jurisdiction over his estate; that the said Receiver Pulliam is in possession of a large amount of money and of approximately 50,000 acres of land belonging to the estate of the said bankrupt, and that the state court is making orders appropriating the assets of said estate and will make other and additional orders for that purpose; that such proceedings are illegal, and are not authorized by the United States bankruptcy statutes; that no judgments of any kind have ever been rendered in said cause; that the proceeding in the state court is a usurpation of the exclusive functions and jurisdiction of the federal court; that the state court has excluded, by its order made within four months of the filing of the petition in bank-

ruptcy, creditors of said estate whose claims as such have been allowed by the referee in bankruptcy; that approximately $15,000 in claims have been filed in the bankrupt proceedings, and that the same have been regularly and legally established; that the receiver in the state court proceedings is performing an administrative function, and not a judicial function, in carrying on the business of a private solvent debtor; that such appointment is not within any jurisdiction conferred upon the said court by the statutes of Texas; that, if this court should hold that the state proceeding was not an action by simple contract creditors against a solvent person, then and in that event the proceeding was an attempted insolvency and bankruptcy proceeding in a state court, which was a usurpation of the exclusive power and jurisdiction of the United States court; that all of the interventions filed in said state court suit were filed within four months of the adjudication of the bankruptcy, except the one by one Frank Roberts in the sum of $1,012 and one A. L. Alir in the sum of $116.30, each of whom was a simple contract creditor.

The receiver made a full and complete answer, and challenged the jurisdiction of the court, claiming that the state court had exclusive jurisdiction, and that it had made the order appointing the receiver more than four months prior to the filing of the bankruptcy petition; that the receiver had held the estate and papers and properties of the said Richardson for more than 16 months and had been constantly administering the same; that all of the creditors in the original petition in the state court were simple contract creditors, except the First National Bank of San Angelo, which held a lien against 5,120 acres to secure its indebtedness of $45,000; that the judgment appointing the receiver was entered in the state court during the regular term of that court, and that the same was within the jurisdiction and power of that court, and that no appeal was taken from that order; "that Richardson acquiesced in the appointment of said receiver;" that such appointment was not made in fraud of the rights of any of the creditors, but that Richardson had become involved, and that he had large properties, and that two judgments had been secured against him, and that he was unable to secure moneys with which to pay such pressing indebtedness, and that "he laid the situation before some of his creditors and several conferences were held thereon between said Richardson and the plaintiffs in said petition;" that said creditors caused a statement to be made up from the books of the said Richardson, showing his assets and liabilities, including the estimated values of his properties, and that said estimate showed an excess of assets over liabilities of some $200,000; "that the matter of handling said estate through bankruptcy and a trustee, or a receivership proceeding in the state court, was discussed between the said Richardson and his creditors; that the said Richardson was of the opinion, and insisted to his creditors, that his indebtedness could be worked out better through a receivership proceeding in the district court of Tom Green county than it could by bankruptcy proceedings and a trustee thereunder, the said Richardson insisting and contending to his said creditors that with a receiver appointed by the said district court to look after the lambing and shearing of said sheep, the sale of the wools, * * * his said ranch and properties

could be made, through that means, to pay out all of his indebtedness and leave him an equity therein;" that the said Richardson was advised by his creditors and by the plaintiffs in said suit that it was their desire to aid and assist him in any way they could consistent with the rights of all of his creditors; that it was discussed that money to pay the pressing debts could be raised by receiver's certificates, and that thereupon said cause was filed, and said Richardson waived service and answered therein, and that the matter was fully considered, under the evidence introduced by the court, and the court entered his order finding the receiver was necessary; that $30,000 in receiver's certificates were issued, which have been paid; that $20,000 annual interest has been paid; that a large sum of taxes has been paid, and that the receiver has received from such properties the sum of $193,238, and has disbursed the sum of $169,267.30; that the general expense of running said ranch by said receivers has been $38,911.72; that in December, 1922, many creditors became dissatisfied and filed suits on their claims and secured judgments and filed abstracts of judgments; that such action embarrassed the receiver and the advisory committee, and interfered with the handling of the property and with the raising of necessary funds, and thereupon a meeting of all creditors was called for December 28, 1922, and the matter of continuing the receivership was fully discussed and considered, and without a dissenting vote it was agreed by the creditors that the receivership should be continued for the benefit of the creditors, "they believing that a larger per cent. on their indebtedness could be realized in that way;" "that therein and thereby the said creditors ratified and confirmed the appointment of the receiver;" that all creditors were required to intervene and prove their claims not later than the 1st of April, 1923; that such order was enlarged to May 1, 1923; that there had been filed with the receiver, and by intervention, claims aggregating over $513,000; that such claims are practically all of the creditors, save and except the claim of the Texas Land Mortgage Company for $100,000 and the state of Texas claim for purchase money on land; that such intervening creditors are the creditors listed in the schedule of creditors shown in the voluntary petition of George Richardson filed in the United States District Court; that Richardson fully acquiesced in the receivership proceedings up to about May, 1923, and in all of the proceedings had thereunder; that the receiver was trying to make the sale of the 49,000 acres of land at $8 per acre, and was negotiating a sale of the same at said figure, and that the said Richardson, in order to prevent said sale, began a course of hindering, delaying, and preventing, and that to accomplish this he and his wife did on May 23, 1923, execute a power of attorney to Mrs. Lola Lowery, by the terms of which she was to receive all of his property, and conveying to her a one-half interest therein, and that the same was recorded on May 25, 1923; that one R. E. Hubbard, a son-in-law of Richardson, caused to be recorded in said deed records an oil and gas lease on approximately 22,000 acres of said lands, which lease purported to have been executed on July 1, 1921, running for a term of 10 years, operations thereunder not to begin until July 1, 1923, the same being filed for record on May 30, 1923; that the estate had been administered economically and well cared for; that it can

be distributed and disposed of at a less cost by said receivership proceeding than through the bankruptcy trustee; that if it is now to go into the bankruptcy court 10 per cent. attorney's fees on the obligations will become a charge, and that an additional expense of $75,000 will be incurred; that during the administration in the state court 38 orders have been made, 24 applications have been filed, 640 acres of land have been sold, 12,387 head of sheep have been sold, 1,557 head of cattle have been sold, 253 head of horses have been sold, and 139,-023 pounds of wool have been sold; that the receiver has paid live stock mortgages in the sum of $95,921.29, has paid interest in the sum of $26,850.20, and taxes in the sum of $6,509.09.

The answer alleged that the showing made as to Richardson's solvency in the original petition was based on information received from him, and that "it was distinctly understood that, if the receivership was applied for upon the grounds of insolvency, it would be an act of bankruptcy, which would authorize and permit any of the dissatisfied creditors within four months thereafter to place said Richardson and his estate in bankruptcy, but they deny that they either expressly or by implication agreed to the making of any showing for the purpose of evading the Bankruptcy Law;" that later they ascertained that the land was not worth $10 per acre, but that it was worth $8 per acre; that, of the $15,000 creditors' claims proven up in the bankruptcy, $7,500 represented attorney's fees of Snodgrass & Dibrill for legal services in other cases.

In addition to the transcript from the state court, the respondent offered testimony of Receiver Pulliam, which showed that the indebtedness of the bankrupt, Richardson, was in excess of that which his books showed at the time of the filing of the application, and that his properties were of less value, so that as a matter of fact there would be an insufficient amount to pay the indebtedness, and that probably 65 or 70 cents on the dollar is the amount that will be realized for the creditors.

[1] From this rather lengthy statement of facts the following positions seem to be correct:

More than four months have elapsed since the appointment of the receiver. Therefore this court has no jurisdiction to order Receiver Pulliam to turn over to the trustee in bankruptcy such properties as he may have, belonging to the bankrupt's estate, unless the appointment of the receiver was void, and there was no waiver of such nullity. The comity between the courts of the two governments, the complete jurisdiction over the res by the state court, make it quite out of the question and quite impossible for this court to take charge, unless the state court had no jurisdiction. Wabash R. R. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379; Farmers' L. & T. Co. v. Lake Street Electric Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435; Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567; Riverdale Mills v. Mfg. Co., 198 U. S. 188, 25 Sup. Ct. 629, 49 L. Ed. 1008; Gunter v. Atlantic Coast Line, 200 U. S. 273, 26 Sup. Ct. 252, 50 L. Ed. 477; Wilson v. Alexander (C. C. A.) 276 Fed. 875; Sovereign Camp

v. O'Neill (D. C.) 286 Fed. 734; Lewis et al. v. Schrader et al. (D. C.) 287 Fed. 893; Kline v. Burke Const. Co., 43 Sup. Ct. 79, 67 L. Ed. 226.

In this country the courts, and even governments themselves, are the creatures of delegated and limited authority. When the authority delegated is exceeded, the act done is null and void. No court is the exclusive judge of the extent of its power; if it were, it might assume all power. Each tribunal must judge of the extent of its power; yet another tribunal, when its action is sought, may also judge of the extent of the first tribunal's power and whether it has exceeded the same. This principle lies at the foundation of our system of law and government, and fixes a limit and raises a barrier to usurped authority. The acts of courts in general jurisdiction are presumed to be within the jurisdiction of the court, until the contrary is made to appear, and when the contrary does appear there should be no hesitancy in so saying. Houston, etc.. v. Randolph, etc., 24 Tex. 317. Jurisdiction must depend on the law creating the court and prescribing its powers, and, if it attempts to exercise a power not thus conferred, its judgments and decrees are not binding, even upon the parties, and may be declared inoperative by any tribunal in which effect is sought to be given to them. Texas & Pacific v. Gay, 86 Tex. 581, 26 S. W. 599, 25 L. R. A. 52.

[2] The power of a court to appoint a receiver is based on the fact of real litigation between the parties, in which it becomes necessary, in the opinion of the court, to take possession of property to which the controversy in some manner relates, in order to preserve it, or, if necessary, to administer it for the benefit of all persons interested. If the parties have no real controversy, and, desiring no lawful relief, institute a suit and have a receiver appointed, such receiver must be treated as the agent of the parties. Texas & Pac. v. Gay, 86 Tex. 604, 26 S. W. 599, 25 L. R. A. 52; James Sup. Co. v. Dayton, etc., 223 Fed. 991, 139 C. C. A. 367. If the appointment of the receiver in the state court was void, then there is no receiver, no custody. This lack of jurisdiction will not be shown outside of the record in that case. Higgins v. Bordages, 88 Tex. 465, 31 S. W. 52, 803, 53 Am. St. Rep. 770.

[3] The state statute (article 2128, Vernon's Sayles' Civil Statutes of Texas) provides:

"Receivers may be appointed by any judge of a court of competent jurisdiction in this state in the following cases:

"(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"(2) In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt.

"(3) In cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

"(4) In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

Article 2154 of the same work:

"No receiver shall ever be appointed of any joint-stock incorporated company, or of any copartnership or private person, on the petition of such joint stock incorporated company, partnership or person: Provided, that any stockholder or stockholders of such joint-stock or incorporated company may have his or their action against such company, and may have a receiver appointed as in ordinary cases; and provided, further, that nothing herein shall prevent a member of any copartnership from having a receiver appointed whenever a cause of action arises between the copartners."

Article 2155 of the same work:

"In all matters relating to the appointment of receivers, and ·to their powers, duties and liabilities, and to the powers of the court in relation thereto, the rules of equity shall govern whenever the same are not inconsistent with the provisions of this chapter and the general laws of the state."

This statute has been construed by the highest courts of Texas, and such construction is, of course, binding upon this court. Was it intended that, whenever a debtor failed.to meet his obligation, he should be liable to have his property and credits put into the hands of a receiver merely because there might exist danger of its being lost, removed, or physically impaired? We think not. The act must be construed as applying only to the funds and property upon which the creditor has a lien for the satisfaction of his debt. The words, "by a creditor to subject any property or fund to his claim," are to be limited to some particular fund or property belonging to a debtor upon which the creditor has a satisfied lien. New Birmingham Iron & Land Co. v. Blevens, 12 Tex. Civ. App. 410, 34 S. W. 828; Cahn v. Johnson, 12 Tex. Civ. App. 304, 33 S. W. 1000; Waples-Platter Co. v. Mitchell, 12 Tex. Civ. App. 90, 35 S. W. 200. This construction by the Texas courts is in harmony with the holding of all of the other courts of the nation, and in harmony with text-book writers.

To authorize the appointment of a receiver, the petitioner must show that he has some lien upon or property right in the property, or that it constitutes a special fund out of which he is entitled to the satisfaction of his demand, and an application 'for such appointment can only be made by those who have an acknowledged interest, or at least a probable right or interest, in or to the property, fund, or assets over which the receiver is sought. A receiver will not be appointed at the instance of a simple contract creditor without a lien. 23 R. C. L. 16. A general or simple contract creditor, who has not reduced his claim to judgment, and who has no right or interest in or lien on the property, has no standing to have a receiver put upon the property. 34 Cyc. 36; Hollins v. Brierfield, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 37 L. Ed. 804.

[4] A court cannot appoint a receiver to take charge of property which is not involved in the litigation, or to take charge of all of a debtor's property, including that which is not, as well as that which is, specially bound for the payment of the claim in suit. 34 Cyc. 44; Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637; Central Trust Co. of New York v. Worcester, etc. (C. C.) 114 Fed. 659; Scott v. Farmers' L. & T. Co., 69 Fed. 17, 16 C. C. A. 358; Staples v. May, 87 Cal. 178,

25 Pac. 346; State v. Jacksonville, P. & M. R. Co., 15 Fla. 201; State v. Union Bank, 145 Ind. 537, 44 N. E. 586, 57 Am. St. Rep. 209; Bowman v. Hazen, 69 Kan. 682, 77 Pac. 589; Branner v. Webb, 10 Kan. App. 217, 63 Pac. 274; Platt v. N. Y., etc., 170 N. Y. 451, 63 N. E. 532.

[5] A simple contract creditor, without any interest in or lien upon the property, generally speaking, has no right to the aid of a court of equity to take charge of assets of a corporation, for the purpose of applying them to the payment of its debts, until it appears that he has exhausted his remedies at law, chief among which is the recovery of a judgment at law and the return of an execution on the same unsatisfied in whole or in part. 34 Cyc. 88; Brenton v. Peck, 39 Tex. Civ. App. 224, 87 S. W. 898; Leary v. Columbus River, etc. (C. C.) 82 Fed. 775; Hollins v. Brierfield Coal, etc., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113.

[6] Where the court has jurisdiction to appoint a receiver in a particular case, the appointment may proceed upon the consent of the parties interested, and in such case the appointment is not invalid on the ground that the defendant entered his appearance voluntarily and answered admitting the allegations of the complaint. 34 Cyc. 106; Boston v. Pacific, etc., 104 Iowa, 311, 73 N. W. 839; Veith v. Ress, 60 Neb. 52, 82 N. W. 116; Horn v. Pere Marquette Co. (C. C.) 151 Fed. 626; Mauch, etc., Bank v. U. S., etc., 105 Ind. 227, 4 N. E. 846; Francis S. Reisenberg, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

[7] Property not involved in the suit as property which is not embraced in the complainant's mortgage, nor protected from the remedies of other creditors by any contract or legal lien, is not properly in the hands of a receiver.

[8] Granting that a simple contract creditor of a corporation may file a bill against it, alleging its insolvency and praying that a court may take charge of its assets, no support is given to an individual to do such a thing. An individual is not a corporation. The administration of the affairs of a solvent individual is not a recognized head of equity jurisdiction. The subject-matter is not one which the court has jurisdiction. Mere waiver by the defendant of objections otherwise fatal to the capacity of the plaintiff to invoke such jurisdiction in the case of a corporation removes the only obstacle to the granting of the relief desired. In the case of an individual defendant, it leaves untouched the most serious difficulty of all, namely, that the subject-matter is not one within the province of the court. Maxwell v. McDaniels, 184 Fed. 311, 106 C. C. A. 453; Davis v. Hayden, 238 Fed. 734, 151 C. C. A. 584; Murray v. Am. Sur. Co., 70 Fed. 341, 17 C. C. A. 138; Hollins v. Brierfield, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804.

[9] To authorize the appointment of a receiver, the petitioner must show either a clear legal right in himself to the property in controversy, or that he has some lien upon or property right in it, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand. 23 R. C. L. 13, 15. It is a well-settled rule of equity that

a receiver cannot be appointed on the petition of the owner of the property, whether a private person or a corporation. 23 R. C. L. 15.

In the absence of a statute, the general rule is that a receiver will not be appointed at the instance of a simple contract creditor without a lien. 23 R. C. L. 16; O'Bear Jewelry Co. v. Volfer, 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31; Barrett v. Pollak, 108 Ala. 390, 18 South. 615, 54 Am. St. Rep. 172; International Trust v. United Coal Co., 27 Colo. 246, 60 Pac. 621, 83 Am. St. Rep. 59; Uhl v. Dillon, 10 Md. 500, 69 Am. Dec. 172; Flournoy v. Bullock, 11 N. M. 87, 66 Pac. 547, 55 L. R. A. 745. Of course, if a court has no jurisdiction over the subject-matter of a proceeding, it has no authority to appoint a receiver. Condon v. Mutual Reserve Fund, 89 Md. 99, 42 Atl. 944, 44 L. R. A. 149, 73 Am. St. Rep. 169.

[10] If it appears, upon the face of the proceedings, that a court's order appointing a receiver was without authority of law, and therefore void, the order may be assailed collaterally, and with impunity, by anybody. State v. Dist. Court, 21 Mont. 155, 53 Pac. 272, 69 Am. St. Rep. 645; Tenth Nat. Bank v. Smith Const. Co., 227 Pa. 354, 76 Atl. 67, 136 Am. St. Rep. 884. If a court is without jurisdiction, the order is void, and may be attacked or disregarded whenever it comes collaterally in question. 34 Cyc. 168.

[11] The state court record discloses that all of the plaintiffs were simple contract creditors, except the one who sought the foreclosure of a lien upon the 5,120 acres of land; that all of the other property, of hundreds of thousands of dollars in value, consisting of real estate and personalty, was free from any express lien or claim whatsoever of the plaintiff. It therefore seems beyond question that the appointment of the receiver, in so far as he was directed to take over the property, other than the 5,120 acres, was irregular.

But the record also discloses that the appointment of the receiver was a legal collusion—not a fraudulent collusion, but a legal collusion—that is, with the consent and under the agreement of the parties plaintiff and defendant. 34 Cyc. 510; Texas & Pac. R. Co. v. Gay, 86 Tex. 604, 26 S. W. 599, 25 L. R. A. 52; James Sup. Co. v. Dayton, 223 Fed. 991, 139 C. C. A. 367; Link Belt, etc., v. Hughes, 195 Ill. 413, 63 N. E. 186, 59 L. R. A. 673; Stirlen v. Jewett, 165 Ill. 410, 46 N. E. 259; Metcalf v. Moses, 161 N. Y. 587, 56 N. E. 67. Having taken and having suffered to be taken the many steps that were taken in the state tribunal, Richardson is estopped, or would be estopped, to come into this court and ask relief on the ground that those proceedings were void. Brown v. Lake Superior, 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021; Yaryan Naval Stores Co. v. Borchardt Co., 217 Fed. 758, 133 C. C. A. 488; Francis S. Reisenberg, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

To the mind of the chancellor, the action of Richardson in going into the state court with his creditors, and then afterward for some reason not certainly disclosed by the record, abandoning them and filing a petition in bankruptcy, does not appeal. He cannot after that length of time be heard to object that the complainants were simple contract creditors. If he were knocking at the door of this court for relief at

the present time, he would not gain entrance; but the petitioner is the trustee in bankruptcy, duly chosen under and by virtue of the provisions of a law which has suspended operation of all state insolvency laws. When a debtor makes a general assignment for the benefit of his creditors, eo instante, there is generated by the statute a right in his creditors to have his affairs wound up and his estate administered in the bankruptcy court pursuant to the Bankruptcy Law, the state court to the contrary notwithstanding. Such right was not exercised by the creditors, nor any of them. But from a voluntary petition sprung the trustee himself, under the latter part of paragraph 2 of section 47, the amendment of 1910 (Comp. St. § 9631), vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied, and "not standing in the shoes of the bankrupt." 2 Collier on Bankruptcy (13th Ed.) p. 1053, citing many cases in point.

He makes this motion. It is his duty to conserve and to gather and to marshal all the assets of the bankrupt. He must do this, even though some of the creditors—aye, the most of them—might secure a larger percentage of their claims by his refusal so to do. In the case of Blair v. Brailey, 221 Fed. 1, 136 C. C. A. 524, the Circuit Court of Appeals for the Fifth Circuit held that the taking possession of the property of a corporation by a court through its receivers in a creditors' suit constituted a levy within the meaning of the Bankruptcy Act, and was therefore rendered void in case the defendant was adjudged bankrupt within four months, and not otherwise, and that, where the receivers were so appointed more than six months prior to the institution of bankruptcy proceedings against the corporation in another district, the jurisdiction of the court over the property was not affected by such proceedings, and it might refuse to surrender the same to the trustee appointed therein.

It is contended that this case rules the case at bar. That was a proceeding against an insolvent corporation, and there was no suggestion in the opinion that the appointment of the receiver therefor was either void or voidable; but, on the contrary the proceeding seems to have been entirely legal. In truth, the court said, "where a *valid* [the italics are mine] judicial lien or levy has been secured" within four months, "the same may be prosecuted to the end," shows that it was not contended that the court proceedings were void, as is the case here. The court further held that what was done in the state court amounted to an equitable attachment of the property. It further said: "When a court *having jurisdiction of the parties and the subject-matter* has taken property into its possession. * * *"

It will be noticed that the state court found the defendant to be solvent; that it was going to administer his estate, or wind it up, so that the defendant would have approximately $200,000 equity. This finding is in the judgment. The result of such a proceeding would be to withdraw an individual's business into the lap of the court, in order that no creditor who was demanding his money could get it. It is an administrative function exclusively. Such proceeding is not within the power of a court of chancery, either inherently or by reason of any statute of Texas.

The case of Davis v. Hayden, 238 Fed. 734, 151 C. C. A. 584 (Circuit Court of Appeals for the Fourth Circuit), cited above, seems to be in point, when Justice Knapp, speaking for the court, said:

"It is to be noted that plaintiff is a mere contract creditor, without lien or security of any kind, and without the claim of right to charge any specific property with the payment of his debt: that Thompson, though temporarily embarrassed by lack of ready money, is asserted to be abundantly solvent; that the suit was evidently brought in pursuance of a prearranged plan between the plaintiff and Thompson; and that it was the obvious purpose of the suit, not to enforce the plaintiff's own demand, but to enable Thompson, by means of a receivership and injunction, to prevent his creditors from taking any steps to collect their claims. * * * We are clearly of opinion that these facts are insufficient to warrant the action of the court below. In its most favorable aspect the plaintiff's case comes under no recognized head of equity jurisdiction. Indeed, we take it to be an established principle of jurisprudence that a court of equity is without power, in the absence of statutory authority, to appoint a receiver of the assets of an individual debtor, or to enjoin the prosecution of claims against him, at the suit of a mere contract creditor, who has no lien or other security, and who asserts no right to subject any specific property to the payment of his debt. * * * The authorities to this effect are numerous and of uniform import."

To reconcile the foregoing with the doctrines of comity and estoppel seems an herculean intellectual feat; but, if we study the adjudications of paragraph 2 of section 47 of the Bankruptcy Act, and ascertain its real meaning, we find that the trustee, while not "standing in the shoes of the bankrupt," since that amendment, takes charge with all of the rights of a judgment creditor *on that date.* This means that if the bankrupt, Richardson, had so acquiesced in the state court proceedings as to estop himself, and make it impossible for him to seek to undo such proceedings, because of nullity, and because he must exhaust his remedies for revision in the state tribunals, then it appears very clear to us that the trustee is likewise foreclosed.

The record disclosed that up to the time of the filing of the voluntary petition in bankruptcy all creditors, as well as Richardson, were satisfied and acting together. At this date all of Richardson's creditors have intervened in the state court, with the exceptions stated, and all of the creditors who make up the $15,000 filed in the bankruptcy court have filed interventions in the state court suit. Every person who had a right to complain before Trustee Logan became trustee had refused to do so, both creditors and debtor. The bankruptcy statute is for the benefit of debtor and creditor. No one else has a direct pecuniary interest. The only interest that Richardson now has is that he shall be discharged from his indebtedness. This interest will ripen. I believe that Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021, Hollins v. Brierfield, etc., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, Francis S. Reisenberg, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403, and Ohio, etc., v. Eiseman, etc., 230 Fed. 373, 144 C. C. A. 512, which hold, in substance, that a defense existing in an equity suit may be waived, just as it may in a law action, and, when waived, the case stands as though objection never existed, should, though rendered in proceedings wherein a corporation was the received entity, be more than merely persuasive to this court, in the light of the fact that such a decision appeals to my sense of jus-

tice, and does violence to neither creditor, debtor, nor comity. Of course the decisions in these last cases presuppose a jurisdiction of the parties and of the subject-matter in the state court, which assumption may not be successfully controverted. It was a court of general jurisdiction; it had jurisdiction of the lien creditor and of the defendant; it had a right to appoint a receiver to receive that particular piece of property; it acted within that right, and, additionally, took into its custody the other property that the defendant had described; and the defendant acquiesced in such procedure, and the administration thereof continued for 16 months, requiring a vast amount of work.

I therefore deny the motion prayed, and dismiss the appeal. An order will be drawn accordingly.